# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 02-1623 & 02-1624

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MALCOLM CARPENTER and JAMAR JOE EVANS,

*Defendants-Appellants.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 01 CR 86-1 & 01 CR 86-2—**Charles R. Norgle, Sr.**, *Judge.*

_____

ARGUED JUNE 10, 2003—DECIDED SEPTEMBER 5, 2003

_____


Before KANNE, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Malcolm Carpenter and Jamar Evans were convicted of armed robbery, 18 U.S.C. § 2113(a), (d), and using a firearm in a crime of violence, 18 U.S.C. § 924(c)(1)(A), after the district court denied their joint motion to suppress statements and physical evidence obtained following their warrantless arrests. Carpenter and Evans appeal, and we affirm.

**HISTORY**

At 3:30 in the afternoon on Wednesday, January 24, 2001, off-duty Chicago Police Sergeant Narvell Lewis, Jr., noticed three young black men in a light-colored Lincoln pull up in front of a store at 11125 South Michigan Avenue. The men caught Lewis's eye because they "appeared to be looking around to see if they were being observed." Lewis watched as one of the men, who turned out to be Evans, stepped out of the car, "looked around the street as though he were checking to see if he was being watched," and then entered the store. Thirty seconds later, a second man did the same: he exited the car, "looked around as if he were checking for surveillance," and stepped inside the store. The second man was later determined to be Antwan Timms. Sergeant Lewis, believing the men might be casing the store, "took a close look" at all three men and "carefully observed what they were wearing." Evans was short and wore dark clothing; Timms wore a white jacket with lettering that read "Karl Kani" (a brand of clothing), a cream-colored baseball cap, and "an unusual pair of jeans[ ] with a tiger emblem on the left leg"; and the man who remained in the car (who turned out to be Carpenter) wore a white leather jacket and baseball cap. After watching Evans and Timms chat with the store's clerk, Lewis concluded that the men were not planning a robbery and left the area.

Earlier that day, on the other side of town, three men of similar description had robbed a bank branch inside a grocery store at 6057 South Western Avenue. Sergeant Lewis learned of the robbery two days later, on Friday, January 26, when he read an article in the *Chicago Daily Defender*. The article described the robbers as three slim black men between 20 and 25 years old: the two who approached the bank tellers and demanded money wore dark clothing (one was around 5'8", the other 5'5"), while the third, who acted as a lookout, was around 5'5" and wore a white leather "Karl Kani" brand jacket and blue jeans with

a tiger emblem on the left leg. Thinking the men he observed might have been the robbers, Sergeant Lewis consulted the police report on the robbery. The report revealed that the robbery occurred at around 9:30 a.m. on the same day Sergeant Lewis had seen Carpenter, Evans, and Timms (not on the following day, as the *Defender* article had reported) and that the robbers were three black men with slender builds between 19 and 20 years old. The report confirmed that two of the robbers had approached the tellers and obtained cash, which contained dye packs, and that both of them wore dark clothing: one was approximately 5'8" and 130 pounds and wore a black leather jacket and a black skull cap; the other was 5'4" and 140 pounds and wore a grey jacket and pants and a red baseball cap. The third robber—the lookout—was described as being 5'9" and wearing a white leather jacket with the words "Car Canal" on the back, blue jeans with a brown tiger on them, and a baseball cap.

Sergeant Lewis, accompanied by other officers, then returned to the area where he had seen the three men two days earlier. When he spotted the men a second time, they were not together: Evans and Timms walked toward each other as if they were going to speak but instead passed each other without stopping; Carpenter stood on a nearby street corner. Moments later, however, Sergeant Lewis saw all three men—Carpenter, Evans, and Timms—riding in the light-colored Lincoln together. The three were arrested and given *Miranda* warnings. All three men were 20 years old at the time of the arrest. Carpenter, who is 5'9" and weighs 160 pounds, was carrying cash stained with red dye matching that used in the bank's dye packs. Evans is 5'2" and 125 pounds. Timms, who is 5'9" and 138 pounds, was again wearing the white Karl Kani jacket. All three men gave statements, and witnesses to the robbery identified Carpenter and Evans in a lineup. Additional physical evidence was later found at Carpenter's house. Upon consideration of

the facts outlined above, in the form of the *Defender* article, police report, and an affidavit from Sergeant Lewis, the district court denied the suppression motion without an evidentiary hearing.

## ANALYSIS

Carpenter and Evans offer a two-part argument: they insist that the only basis for Timms's arrest was his clothing, which was insufficient, and that their own arrests were likewise without probable cause because they were based solely on the fact that they were seen in Timms's company. Both propositions are incorrect.

First, this argument fails to give due weight to the fact that Timms was wearing a distinctive outfit—the white designer jacket and tiger-embellished jeans—just six hours after a man wearing an identical outfit robbed a bank. In these circumstances, Timms's clothing alone might have established probable cause for his arrest; Sergeant Lewis described Timms's pants in particular as "unusual," and Carpenter and Evans point to nothing in the record that refutes this characterization. *Cf. Chambers v. Maroney*, 399 U.S. 42, 44, 47-48 (1970) (probable cause to arrest men in blue station wagon containing green sweater and trench coat one hour after robbery where car and clothing matched witnesses' descriptions); *United States v. Diggs*, 522 F.2d 1310, 1314 (D.C. Cir. 1975) (probable cause to arrest men in car containing denim jacket, trench coat, and rust-colored briefcase shortly after robbery where clothing and briefcase matched witnesses' descriptions). But there was more: Timms fit the police report's description of the lookout's age, race, and height exactly, and he was seen in the company of two men—Carpenter and Evans—who fit the general description of the other two robbers just six hours after the robbery occurred, and again two days later. *See Pasiewicz v. Lake County Forest Pres. Dist.*, 270 F.3d 520, 522, 524-25

(7th Cir. 2001) (probable cause to arrest suspect who bore "fair resemblance" but "did not match exactly" witnesses' descriptions as to age, height, weight, and hairstyle); *United States ex rel. Hollman v. Rundle*, 461 F.2d 758, 759 (3d Cir. 1972) (probable cause to arrest suspect in two-man robbery who matched physical description of first robber "perfectly" and was accompanied by a man closely fitting description of second robber). *Cf. United States v. Scheets*, 188 F.3d 829, 833, 837-38 (7th Cir. 1999) (reasonable suspicion to detain suspect who matched robber's description as to age, race, height, weight, hair color, facial hair, limp, use of glasses and cane, and "cupped appearance" of one hand). In addition, Timms and one of his companions (Evans) appeared to be checking to see if they were being watched. *See, e.g.*, *United States v. Odum*, 72 F.3d 1279, 1285-86 (7th Cir. 1995); *United States v. Foster*, 939 F.2d 445, 450 (7th Cir. 1991); *United States v. Sterling*, 909 F.2d 1078, 1079, 1083-84 (7th Cir. 1990); *United States v. Jaramillo*, 891 F.2d 620, 627 (7th Cir. 1989). All of these facts amount to probable cause for Timms's arrest. Indeed, as we explained in an unpublished order dismissing Timms's appeal, *United States v. Timms*, No. 02-1310, 2003 WL 22017514 (7th Cir. Aug. 21, 2003), any argument that police lacked probable cause to arrest Timms would be frivolous.

Carpenter and Evans's second premise—that only their propinquity to Timms supported their arrests—is wrong as well. While it is true, as Carpenter and Evans note, that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause," *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), that does not mean propinquity is irrelevant, *see, e.g., United States v. Chaidez*, 919 F.2d 1193, 1200 (7th Cir. 1990). Here, Carpenter and Evans were spotted with a likely suspect in a three-man robbery twice—once mere hours after the robbery occurred—and on both occasions they engaged in countersurveillance tactics: on Wednesday,

they scanned the area to see if they were being watched, *see, e.g.*, *Odum*, 72 F.3d at 1285-86; *Foster*, 939 F.2d at 450; *Sterling*, 909 F.2d at 1079, 1083-84; *Jaramillo*, 891 F.2d at 627; on Friday, they separated on the street only to meet up and drive away together moments later, *see, e.g.*, *Chaidez*, 919 F.2d at 1200 (more than propinquity supported detention where suspects split up and met later as countersurveillance tactic). And there was more than just Carpenter and Evans's association with Timms; they themselves fit the police report's general description of the other two robbers as to race, age, and other respects. Carpenter's height and dark clothing matched that of the 5'9" black-leather-jacket-clad robber described in the report, while both Evans (at 5'2") and the 5'4" robber described in the report were unusually short. *See Pasiewicz*, 270 F.3d at 522, 524-25 (probable cause to arrest suspect who "resembl[ed]" but did not exactly match witnesses' descriptions as to age, height, weight, and hairstyle); *Hollman*, 461 F.2d at 759 (probable cause to arrest suspect who matched physical description of bank robber). Finally, the fact that the clothing Carpenter and Evans were wearing when Sergeant Lewis spotted them several hours after the robbery did not more specifically match the police report's description of the robbers' clothing does not undermine probable cause. On the contrary, it is generally assumed that robbers will *change* their clothes after the crime to avoid being recognized. *See, e.g., United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir. 1994); *United States v. Jackson*, 652 F.2d 244, 247 (2d Cir. 1981); *Brown v. United States*, 365 F.2d 976, 978 (D.C. Cir. 1965). Here, where Carpenter and Evans obtained cash containing exploding dye packs, there is even more reason why they might have changed their clothes after the robbery while Timms, who merely stood watch and did not handle the money, did not.

## CONCLUSION

Because there was sufficient probable cause to arrest Carpenter and Evans, their convictions are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*