In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3462

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRYL FRANKLIN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 848—**James F. Holderman**, *Chief Judge.*

ARGUED APRIL 6, 2007—DECIDED APRIL 30, 2007

Before POSNER, FLAUM, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* Darryl Franklin pleaded guilty to two counts of using a telephone in the commission of a drug crime, in violation of 21 U.S.C. § 843(b). The district court sentenced Franklin to 84 months of imprisonment applying the dangerous weapon enhancement under Sentencing Guideline § 2D1.1(b)(1). Franklin appeals the district court's decision to enhance his sentence. For the following reasons, we reverse the district court's decision and remand for re-sentencing.

## I. BACKGROUND

On June 10, 2004, Franklin arranged to buy four ounces of cocaine from his drug supplier, Rafael Hardy. Two days later, on June 12, 2004, Franklin and his fiancée drove from Minnesota to Chicago and purchased 4.5 ounces of powder cocaine from Hardy for $2500. Before Franklin left Chicago, he and Hardy cooked one-eighth of an ounce of the powder cocaine into crack cocaine. On the return trip, Franklin sat in the front passenger seat of his van while his fiancée drove. Chicago police officers Donald Hill and Ziad Hamideh, who were investigating Franklin as part of a larger drug conspiracy, stopped the van. As the officers approached the van, they observed a knife in a leather sheath in plain view by Franklin's foot. They also saw a razor blade covered in a white powdery substance in the front console ashtray. To keep the drug investigation covert, the officers told Franklin and the driver that there was a stabbing in Elgin—an event that never occurred—and that the assailants were in a van matching the description of Franklin's vehicle. Franklin and his fiancée consented to a search of the van. During the search, the officers found 118.2 grams of powder cocaine inside the car's interior wall behind the driver's seat. They kept the drugs but released Franklin and his fiancée. The officers did not confiscate the knife.

On June 13, 2004, police intercepted a call between Franklin and Hardy, during which Franklin told Hardy about the officers' search. Franklin informed Hardy that the officers had taken the powder cocaine, but did not find the crack cocaine. Franklin also relayed the officers' story about the basis for the stop and expressed concern because he had a knife in his van. He asked Hardy, "you know the knife I keep on the side of my seat . . . . You ain't never seen that?"

On October 12, 2005, a grand jury indicted Franklin and numerous other individuals, including Hardy, for con-

spiracy to possess with intent to distribute controlled substances. On April 5, 2006, the government filed a superceding information charging Franklin with two counts of using a telephone in the commission of a drug crime in violation of 21 U.S.C. § 843(b). On April 6, 2006, Franklin pleaded guilty to both counts. The probation office prepared a pre-sentence investigation report ("PSR") that recommended a two-level dangerous weapon enhancement under U.S.S.G. § 2D1.1(b)(1) because of the knife in Franklin's van. Franklin filed a sentencing memorandum objecting to the dangerous weapon enhancement. The government did not file a response.

On August 24, 2006, the district court held a sentencing hearing at which Franklin reiterated his objection to the dangerous weapon enhancement. Franklin testified that he "bought [the knife] from a flea market, because I was using it as a tool because I am an electrician. It was just something that I had in the car. And it was in a little case, and it was the kind you put on the side of your belt. The main purpose was I strip wires with it." He described the knife as "a little pocket knife" in a little leather case and stated that the knife was on the console "right between the seats of the van." The government did not contest Franklin's assertion that he was an electrician or that electricians use such a knife in their trade. After hearing Franklin's testimony, the district court stated, "I believe that the enhancement should not apply."

The district court then reviewed an FBI report regarding the stop and noted two discrepancies between Franklin's testimony and the report. First, although Franklin testified that the knife was on the console, the report indicated that the officers saw it by Franklin's foot. Second, the district court noted that the report described the knife as being in a leather sheath while Franklin testified that the knife was in a case. The court then

changed its position and ruled that the dangerous weapon enhancement applied.

When calculating Franklin's applicable Guidelines range, the district found that the appropriate base offense level was 26. It then applied the two-level dangerous weapon enhancement, and reduced the offense level by three for acceptance of responsibility. Because Franklin's criminal history category was IV, the district court found that the corresponding Guidelines range was 84 to 105 months, with a statutory maximum of 96 months. The district court sentenced Franklin to 84 months in prison.

## II. ANALYSIS

Franklin argues that the district court erred by applying the § 2D1.1(b)(1) enhancement for possession of a dangerous weapon. This Court reviews the district court's factual determination to enhance a sentence under § 2D1.1(b)(1) for clear error. *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005).

Section 2D1.1(b)(1) provides for a two-level increase in the base offense level "if a dangerous weapon (including a firearm) was possessed." The Guidelines define "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 2D1.1(b)(1). Application Note 3 to the commentary states that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* Franklin concedes that he had possession of the knife during the commission of his crime and bears the burden of showing that it was clearly improbable that the knife was connected to his offense. *Bothun*, 424 F.3d at 586.

The district court decided to apply the dangerous weapon enhancement after noting two discrepancies between Franklin's testimony and an FBI report about the search of Franklin's van. It first noted that the FBI report stated that the knife was located by Franklin's foot and not on the console. Although the district court was free to credit the FBI report over Franklin's testimony, the district court did not explain why the knife's location made it more likely that it was used in connection with Franklin's offense. Arguably, the knife would have been more accessible on the console, between the front seats in the van, than on the floor by Franklin's foot. Because the government agreed that Franklin did not attempt to hide the knife, the district court's conclusion is particularly problematic.

The district court was also troubled by the fact that Franklin said he possessed a pocket knife even though the FBI report stated that Officer Hamideh observed the knife in a leather sheath. The district court made this point during the following exchange with Franklin:

Court: Now, you say this was a pocket knife, but there was a leather sheath—

Franklin: Yeah, it was a—

Court: —for the blade?

Franklin: It was inside a leather case, uh-huh. It was inside a leather case, and it was like a little pocket knife, 'cause I do electrical, Your Honor.

Court: A pocket knife folds up.

Franklin: Yeah, and it was inside a case, sir. Because, you know, when you doing like—

Court: A case is different than a sheath. A sheath covers the blade.

> Franklin:   No, it wasn't the kind that stays out. You flick it open, a pocket like, a pocket knife.

This exchange suggests that the district court misconstrued the definition of "sheath." It stated that a case is different than a sheath because a sheath covers the blade, but that is not always true. One definition of sheath is "a case or covering for the blade of a sword, dagger, or the like." A second definition, however, is "any similar close-fitting covering or case." Webster's Collegiate Dictionary 1145 (11th ed. 2003). The district court seems to have inferred that the knife was larger than Franklin alleged because it believed that a sheath was different from a case and only covered the knife's blade. The district court's interpretation is of concern because Franklin tried to clear up the confusion by stating that this was not "the kind of knife that stays out."

Another fact that heavily counsels in favor of reversal is that the police officers who stopped Franklin in his van saw the knife, made note of it, and did not confiscate it. The officers had been investigating Franklin as part of a vast drug conspiracy and found drugs in his possession that day, yet they did not take any action with regard to the knife. This decision indicates that the officers believed that the knife was not relevant to Franklin's offense. Likewise, the government executed a plea agreement with Franklin and did not seek a § 2D1.1(b)(1) enhancement as part of the calculations. Even at sentencing, the government stated that its "position would be that [the knife] [wa]s connected to his business and that, therefore, on those facts, then it [wa]s clearly improbable that it was connected to his drug-dealing activities."

On appeal, the government cites *United States v. Alston*, No. 97-1626, 1994 WL 269586, *7 (6th Cir. June 17, 1994) in support of its argument that the district court did not clearly err by applying the enhancement. In *Alston*, the

defendant, convicted of drug trafficking, challenged the district court's application of the dangerous weapon enhancement for his possession of a knife. The defendant argued that the knife he possessed was not dangerous, but the court, which made the knife a part of the record on appeal, held that the knife was "no mere pocket knife." *Id.* It noted that the knife was a single-bladed device measuring eight inches long and had a locking mechanism to prevent the blade from collapsing while in use. The court held that "there is no doubt that the knife could be used to inflict death or serious bodily injury." *Id.* The defendant next argued that it was clearly improbable that the knife was connected to his drug-trafficking offense because he had been acquitted on a weapons charge for firearms that had also been found during his arrest. The court rejected this argument as well. *Id.* Despite the government's claim, this case is distinguishable from *Alston* because Franklin does not contend that his pocket knife was not a dangerous weapon. Nor does Franklin contend that the enhancement should not apply because of a separate acquittal.

The government also maintains that the district court properly could have found that Franklin's knife had two purposes. The government contends that because Franklin testified that the "main purpose" of his knife was for electrical work, one could assume that the knife also had a second, nefarious purpose. This is an inaccurate characterization of Franklin's testimony, which was that he used the knife as a tool and that its "main purpose" was to strip wires.

The government next argues that the knife may have had a non-work-related purpose because Franklin did not testify that he was performing any electrical work on the day the officers stopped his van. We reject this argument as well. There was ample evidence that Franklin kept the knife in the van on a permanent basis. Indeed, his

wiretapped conversation with Hardy supports this testimony because he asked Hardy, "you know the knife I keep on the side of my seat?"

After reviewing the record, we conclude that the district court clearly erred by applying the dangerous weapon enhancement.

### III.  CONCLUSION

For the above reasons, we REVERSE the district court's application of the § 2D1.1(b)(1) enhancement and REMAND for re-sentencing.

A true Copy:

      Teste:

                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*