In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2382

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TERRANCE A. MCCAULEY,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:08-cr-00151-bbc-1—**Barbara B. Crabb**, *Judge.*

ARGUED NOVEMBER 3, 2010—DECIDED OCTOBER 6, 2011

Before EASTERBROOK, *Chief Judge*, and WILLIAMS, *Circuit Judge*, and PALLMEYER, *District Judge.**

PALLMEYER, *District Judge*. When police arrested Terrance A. McCauley on an assault charge, they found crack cocaine secreted in his pants leg. McCauley moved to suppress the drug evidence, but the district court

_____

* The Honorable Rebecca R. Pallmeyer, United States District Court for the Northern District of Illinois, sitting by designation.

denied the motion and, after accepting McCauley's condi-
tional guilty plea, sentenced McCauley to the mandatory
minimum five-year term. On appeal, McCauley argues
that his arrest was not supported by probable cause
and that the district court erred in concluding that the
use of a baseball bat in the assault justified enhancing
his sentence for use of a weapon. We are satisfied that
probable cause existed for McCauley's arrest and that
the weapons enhancement was appropriate. We there-
fore affirm his conviction and sentence.

## I.

At about 7 p.m. on September 11, 2008, Willie Aikens
drove her boyfriend, David Neeley, to an apartment in
the High Ridge Trail area of Fitchburg, Wisconsin, to
pay $40 to a man he knew as "Twin." Neeley entered the
apartment and paid his debt, but Twin exacted a penalty
for Neeley's delay in paying him: Twin began punching
Neeley, and after another man grabbed Neeley and held
him by the neck, Twin beat him with a baseball bat.
Neeley ran out of the apartment about 20 minutes after
he had entered, got into the car with Aikens, and told
her "they jumped on me."

Aikens and Neeley spent several hours driving
around, debating what to do; we presume he preferred
not to draw attention to his dealings with Twin (Aikens
later reported she believed the $40 was a drug debt).
Eventually, however, Aikens brought Neeley to St. Mary's
Hospital, where, at about 12:30 a.m., he was interviewed
by Officer Matthew Wiza. Wiza observed a large bruise

on top of Neeley's head, a bruised knee, and a cut lip. Though he did not know the precise address, Neeley gave Wiza directions to the apartment where he had been assaulted. Neeley described Twin as black, six feet tall, medium build, with collar-length braided hair, clothed in a blue tank top and blue jeans, and wearing an electronic monitoring bracelet on his ankle. Neeley described the other man as black, between 5-feet and 5-feet-4-inches, with a medium build of around 125 pounds, and braided, collar-length hair.

Wiza contacted his sergeant, who advised him that the man he described as "Twin" might be an individual on electronic monitoring named Mica Johnson, and provided Wiza with an address for Johnson.[1] Wiza, accompanied by two other officers, drove to Johnson's residence, arriving between 1:30 and 2:30 a.m. on September 12. The directions Neeley had provided proved accurate, matching the route police took once they had Johnson's address in hand. On his arrival, Wiza went to the front door, where he heard some sort of social gathering inside. He knocked on the door for a few minutes, until it was opened by a man about 5-feet to 5-feet-4-inches tall, with a slender build and collar-length braided hair. That man turned out to be McCauley. Wiza believed

---

[1] Mica Johnson was ultimately identified as Micah Richardson. Based on the record, it appears that at the time of these events police did not know he was actually named Richardson, and had contact information for an individual on electronic monitoring named Johnson. It is not clear when or under what circumstances his actual identity was ascertained.

McCauley to be the same person Neeley described as having restrained him while Twin hit him with the bat. Wiza told McCauley he wanted to talk to him, but McCauley shut the door and locked it. Wiza continued to knock on the door, until a man matching the description of Twin opened the door. The man asked what Wiza wanted. "I think you know why I'm here," Wiza replied. The man shut the door, locked it, and turned off the lights.

Wiza was, in the words of the magistrate judge, "undaunted—and irritatingly tenacious." He continued knocking on the door for five to ten more minutes. At this point, McCauley stepped outside of the apartment with a woman and began walking away. Wiza immediately handcuffed him and brought him toward the squad car. Prior to placing McCauley in the car, Wiza patted him down. Between the shin and thigh of McCauley's left leg, Wiza detected something that, he later testified, "felt to me like a plastic baggie of crack cocaine," something Wiza was familiar with from five previous instances in which he had encountered the substance during pat-downs. Wiza pulled lightly at the man's pant leg and the bag—later determined to contain crack cocaine and several pills of MDMA (ecstacy)—fell to the ground.

McCauley moved to suppress the drug evidence, and the magistrate judge conducted a hearing at which Wiza testified. Magistrate Judge Crocker concluded that the "confluence of physical description, timing and propinquity [were] sufficient to establish probable

cause that McCauley was the man that held Neeley during the beating." *United States v. McCauley*, No. 08-cr-151-bbc, 2010 WL 697286, at *6 (W.D. Wis. Feb. 25, 2010). Having found probable cause to arrest existed before McCauley was searched, Judge Crocker concluded that the search incident to arrest did not run afoul of the Fourth Amendment, even though it occurred prior to McCauley's formal arrest. *Id.* at *4.

McCauley objected to Judge Crocker's ruling. He did not challenge the conclusion that a search incident to arrest was lawful, but argued that Wiza lacked probable cause to arrest him. Judge Crabb agreed with Judge Crocker, concluding that when Wiza returned to the scene of the beating and encountered two individuals who matched the descriptions Neeley provided, the circumstances were "sufficient to warrant a prudent person of reasonable caution in believing that defendant had committed an offense." *McCauley*, 2010 WL 697286, at *1.

McCauley pleaded guilty to both counts of the indictment against him, but reserved in writing the right to appeal the district court's ruling on suppression. (The first count, not challenged here, was for distribution of cocaine base on May 29, 2008.) On March 8, 2010, the probation officer filed a pre-sentence investigative report ("PSR") recommending that McCauley not receive a two-level increase for possession of a dangerous weapon (in this case, a baseball bat), because there was "insufficient evidence" to support such an enhancement. The PSR concluded that McCauley could satisfy all

of the criteria in U.S.S.G. § 5C1.2(a)(1)-(5), making him eligible to escape the statutory minimum sentence pursuant to the "safety valve."[2] The PSR also recommended his offense level be reduced by two pursuant to § 2D1.1(b)(11), which, in the 2010 version of the guidelines, provides for a two-level decrease when the criteria of the "safety valve" provision are met.

At McCauley's sentencing hearing on May 28, 2010, Micah Richardson took sole responsibility for Neeley's beating, testifying that McCauley did not participate, and that, in fact, McCauley was upstairs in the bathroom for the duration of the incident. Judge Crabb did not believe Richardson, and opted to impose the enhancement for use of a dangerous weapon:

> I tend to agree with [the government] that Mr. Richardson's testimony is incredible. When you put it together with the fact that Mr. Neeley identified Mr. McCauley, was able to pick his picture out of a lineup when theoretically he never laid eyes on him during the time that he was present at Mr. Richardson's apartment, that coincidence just seems so completely improbable, along with the other evidence that we have.

---

[2] The "safety valve" provision, U.S.S.G. § 5C1.2, allows a court to impose a sentence without regard to the statutory mandatory minimum if five criteria are met, including, as relevant here, that the offender must not have used violence, a credible threat of violence, or a dangerous weapon in connection with the offense; the offense must not have resulted in death or serious injury to anyone. U.S.S.G. § 5C1.2(a)(1)-(5).

Finding McCauley was no longer eligible for the safety valve, Judge Crabb imposed the mandatory minimum sentence of 60 months. McCauley filed a notice of appeal on June 7, 2010.

## II.

Defendant brings this appeal from the final order imposing his sentence pursuant to his conviction of a federal crime for possession of cocaine base in violation of 21 U.S.C. § 841. 28 U.S.C. §§ 1291, 1294; 18 U.S.C. § 3742(a). He challenges the district court's denial of his suppression motion, arguing that because Wiza had only a "very basic description" of McCauley, the officer did not have probable cause to arrest him, and therefore the crack cocaine discovered during the search that occurred immediately before his formal arrest should have been suppressed.

Probable cause to arrest requires an arresting officer to possess "knowledge from reasonably trustworthy information" that would lead a prudent person to believe that a suspect has committed a crime. *United States v. Villegas*, 495 F.3d 761, 770 (7th Cir. 2007) (citation and quotation omitted). "Whether a police officer acted on probable cause is determined based on the common-sense interpretations of reasonable police officers as to the totality of the circumstances at the time of arrest." *Id.* (citation and quotation omitted). The district court was satisfied that Wiza did have probable cause for McCauley's arrest. We review the court's legal conclusions *de novo* and its findings of fact for clear error. *United States*

*v. Jackson*, 598 F.3d 340, 344 (7th Cir. 2010) "A factual finding is clearly erroneous only if, after considering all the evidence, we cannot avoid or ignore a 'definite and firm conviction that a mistake has been made.'" *United States v. Burnside*, 588 F.3d 511, 517 (7th Cir. 2009) (quotation and citation omitted).

In arguing that there was no error here, the government notes that McCauley and Johnson matched the descriptions provided by Neeley and were found in the apartment described by Neeley. McCauley responds that, based on the description provided by Neeley and the position advocated by the government, "all short black males, near the High Ridge Trail location, would be subject to arrest." (Reply at 5.) He cites *Ybarra v. Illinois*, 444 U.S. 85 (1979), where police entered the Aurora Tap Tavern with a search warrant based on suspicion that the bartender was a heroin dealer, but then proceeded to search all of the bar's patrons. Among those patrons was Ybarra, on whom the officers found a cigarette pack containing heroin. In concluding that officers lacked probable cause to search Ybarra, the Supreme Court noted that Ybarra had done nothing suspicious while in the bar. "[T]he agents knew nothing in particular about Ybarra, except that he was present, along with several other customers, in a public tavern at a time when the police had reason to believe that the bartender would have heroin for sale." *Id.* at 91. "[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* (citation omitted).

The circumstances of McCauley's arrest are quite different from those at issue in *Ybarra.* Ybarra happened to be on the premises when the police arrived to investigate someone else. In this case, the police had specific information about two individuals who had participated in a specific crime, including the location where it occurred and a description of the perpetrators. That information pointed to McCauley. Unlike Ybarra, about whom the police knew "nothing in particular," Wiza knew that a person at the apartment, matching McCauley's description, had participated in a beating only hours earlier. "Probable cause to arrest exists when a reasonably cautious and prudent person would be justified in believing that the individual to be arrested had committed . . . a crime." *United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005) (citation and quotation omitted). *Ybarra* might be instructive if, because the apartment Neeley described was known as a drug house, Wiza had entered through some legitimate means (a search warrant, consent, or observation of drugs in plain sight), and then proceeded to indiscriminately search everyone in the apartment. That is not what occurred here.

McCauley points to a trio of older cases in which courts found there was no probable cause to arrest based on a bare-bones description and a location. In *Gatlin v. United States*, 326 F.2d 666 (D.C. Cir. 1963), for example, the D.C. Circuit Court concluded that Gatlin had been arrested without probable cause when

> [t]he only evidence on which the arrest was predicated was the fact that there was a robbery, that one of the

robbers was a Negro wearing a trench coat, that a Negro man fled from a taxi, and that Gatlin, a Negro man, was observed walking down the street a mile and a half from the robbery wearing a trench coat.

326 F.2d at 670-71. Such evidence was not enough, the court held, to "justify deprivation of liberty." *Id.* at 671. In *United States v. Short*, 570 F.2d 1051 (D.C. Cir. 1978), the court found there was a reasonable basis for an investigative stop, but not an arrest, when the defendant was found a block and a half from the scene of a burglary, wearing the same haircut and similar clothing to what the burglary suspect reportedly wore. The court noted that "the description received over the police radio fits many young people in that area of Washington," *id*. at 1053, and that defendant Short was wearing a "darker" or "reddish brown" jacket, not the "camel-colored" jacket described in the police radio dispatch. "Officer Carter obviously was looking for individuals with a jacket of any arguable shade of brown. As such, the description was not of itself probable cause for arrest." *Id.* at 1054 n.4. Finally, in *United States v. Fisher*, 702 F.2d 372 (2d Cir. 1983), police officers had arrested Fisher in an area where they believed three bank robbers to be. As in *Short*, the court concluded there was a basis for an investigatory stop, but not an arrest, where the arresting officer "had only the most general description of the robbers that would have fit Fisher"—a tall, possibly slim, black male—and "nothing Fisher said or did in response to questioning when he was stopped provided probable cause for his arrest." *Id.* at 377.

*Gatlin, Fisher*, and *Short* are readily distinguishable from this case. In all three of those cases, the suspects were apprehended in public areas, and none nearly as close to the alleged crime scene as McCauley. Wiza had a much more specific description of Richardson, including the electronic monitoring bracelet, than did the officers involved in the cases on which McCauley relies. In addition to the fact that McCauley matched the description of one of the two persons involved in the attack on Neeley, Wiza knew that McCauley had exited an apartment in which the other suspect had been seen.

Both parties here identify *Hill v. California*, 401 U.S. 797 (1971), as an example of a case where probable cause was found despite what turned out to be a case of mistaken identification. Police in that case had received detailed information about a suspect in an armed robbery. When they went to that individual's apartment to arrest him, they encountered a man at that address who acknowledged he was in the suspect's apartment but produced identification with a different name than that of the suspect. *Id.* at 798-99. The police nevertheless arrested the man who roughly resembled the suspect's description, and, among other things, "denied knowledge of firearms in the apartment although a pistol and loaded ammunition clip were in plain view in the room." *Id.* at 803-04 & n.6. Though police arrested the wrong man, the arrest was supported by probable cause, and the fruits of the search incident to that arrest were therefore admissible at defendant's trial. The Supreme Court affirmed the conviction, explaining that "sufficient proba-

bility, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time." *Id.* at 804. In this case, as in *Hill*, police responded to a location where they believed a suspect to be, and arrested someone closely resembling the description of the person they were pursuing.

Notably, in each of the more recent cases that McCauley cites, we found probable cause did support the challenged arrests. In *United States v. Carpenter*, 342 F.3d 812 (7th Cir. 2003), we reviewed the arrest of an individual wearing a "white designer jacket" with a "Karl Kani" logo on it and "tiger-embellished jeans." *Id.* at 814. That police found an individual wearing these same clothes "just six hours after a man wearing an identical outfit robbed a bank . . . alone might have established probable cause for his arrest." *Id.* The government responds that while "[i]t may be true that other cases have different or stronger evidence to support probable cause to arrest, [ ] that does not mean that probable cause was lacking in this case." (Reply at 18.) We agree. The fact that the description of the suspect's clothing in *Carpenter* was so specific does not mean that a less specific description suggests a lack of probable cause to arrest.

McCauley also cites *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 522 (7th Cir. 2001), for the proposition that this court requires more than a "barebones physical description" before probable cause

to arrest will be found. In that case, two women who had been out horseback riding in a forest preserve saw a naked man on the trail. *Id.* at 522. Both described him as around 6 feet, 240 pounds, bald, and in his fifties. *Id.* The next day, one of the women believed she saw the same man pull into a school parking lot. She was able to ascertain the man's name, phone number, and address, which she passed along to police. Pasiewicz was arrested for public indecency, but ultimately acquitted,[3] and filed a § 1983 lawsuit against the Forest Preserve, whose police had investigated the incident and arrested him, alleging violations of the Fourth and Fourteenth Amendments. *Id.* at 523. In reviewing the district court's grant of summary judgment for the defendant officers, we explained that probable cause existed because "[w]hen police officers obtain information from an eye-witness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Id.* at 524 (citations omitted). Pasiewicz "did not match exactly the characteristics provided by the two women, [but] he bore a fair resemblance." *Id. Pasiewicz* differs in many respects from the case at hand, but, contrary to McCauley's assertions, it does not undermine a

---

[3] Our opinion did not address all of the circumstances of the acquittal, but we noted that there was no evidence of "lewd conduct" and that Pasiewicz appeared to have an "airtight alibi" that was never tested in state court because of the directed verdict. *Id.* at 523.

finding of probable cause. Indeed, just as in *Pasiewicz*, the police officer arrested the suspect on the strength of eyewitness testimony. That Wiza was not given McCauley's name differentiates the situation, but does not defeat probable cause. In either case, police were justified in believing to a sufficient probability that the individual they arrested was, in fact, the individual they sought.

Viewing the "totality of the circumstances," Judge Crabb and Magistrate Judge Crocker did not err in finding Wiza's judgment consistent with that of a prudent police officer.

**III.**

McCauley also appeals Judge Crabb's imposition of a sentence enhancement for use of a dangerous weapon in connection with the offense of conviction pursuant to U.S.S.G. § 2D1.1(b)(1). To support such an enhancement, "the government bears the burden of proving by a preponderance of the evidence that a [weapon] was possessed during the commission of the offense or relevant conduct." *United States v. Womack*, 496 F.3d 791, 797 (7th Cir. 2007) (citations and quotation omitted). If the government makes such a showing, the burden shifts to the defendant to show that "it is clearly improbable that the weapon was connected with the offense." *Id.* (citation and quotation omitted); U.S.S.G. § 2D1.1, application n.3.

In reviewing the application of a sentence enhancement, this court reviews the district judge's factual

findings for clear error, and the application of those findings to the Sentencing Guidelines *de novo*. *Womack*, 496 F.3d at 792. In determining whether clear error has occurred, "[p]articular deference is given to credibility determinations, which will not be disturbed unless 'completely without foundation.'" *United States v. Collins*, 604 F.3d 481, 486 (7th Cir. 2010) (citation and quotation omitted). As explained earlier, the district court's finding is clearly erroneous only if "we cannot avoid or ignore a 'definite and firm conviction that a mistake has been made.'" *Jackson*, 598 F.3d at 344 (citations and quotation omitted).

In this case, the imposition of this enhancement did have significant practical consequences for McCauley. Had it not been imposed, he might well have qualified for the "safety valve" provision of U.S.S.G. § 5C1.2(a)(1)-(5), and potentially have been exempted from the 60-month mandatory minimum sentence the court imposed. In support of his challenge to the sentence enhancement, McCauley notes Richardson's testimony, at McCauley's sentencing hearing, that McCauley did not participate in Neeley's beating and was in an upstairs bathroom for the duration of the beating.[4] In several cases,

---

[4] McCauley also urges that this enhancement was unwarranted because, "even if we assume [McCauley] did possess the bat, it has not been proven that it was possessed during the course of offense of conviction." (Pet.'s Br. at 27.) Beyond this single sentence, however, McCauley's opening brief made no mention of this argument. A single sentence in an opening

(continued...)

McCauley contends, this court upheld a § 2D1.1 enhancement where there was direct evidence to support a finding that a weapon was used in connection with a drug offense—evidence he contends was not present in his case. *United States v. Thomas*, 294 F.3d 899, 906 (7th Cir. 2002) (affirming enhancement where drug paraphernalia was found in car's hidden compartment along with a loaded handgun); *United States v. Linnear*, 40 F.3d 215, 219 (7th Cir. 1994) (key witness testified defendant pulled a handgun on him while packaging cocaine); *United States v. Orozco*, 576 F.3d 745, 752 (7th Cir. 2009) (gun and ammunition found in same home as digital scale with traces of cocaine residue).

In contrast, this court reversed a § 2D1.1 enhancement where a knife was found in the van of a defendant arrested after traveling from Minnesota to Chicago to purchase cocaine. *United States v. Franklin*, 484 F.3d 912, 913 (7th Cir. 2007). The defendant there conceded that he possessed the knife when arrested, but argued that it was not connected to the offense. Instead, he asserted, it was a pocketknife he kept in a "leather case" and used for electrical work. *Id.* at 915. The district judge concluded the knife was larger than defendant said it was merely because the judge understood the knife had been

---

[4] (...continued)

brief is not enough to preserve an argument, even if that argument is expanded upon in a reply brief. *Citizens Against Ruining the Environment v. E.P.A.*, 535 F.3d 670, 675 (7th Cir. 2008).

found in a "sheath" rather than a "case." *Id.* This court also noted that the police officers who stopped Franklin and confiscated his cocaine "saw the knife, made note of it, and did not confiscate it"—conduct that suggests the officers themselves concluded the knife was not relevant. *Id.*

McCauley has not argued here that the weapon was unconnected to the offense of conviction (or has waived any such argument). Rather, McCauley argues that he did not participate in the alleged assault, and therefore should not have been subject to the enhancement at all. McCauley's support for this argument is limited to Richardson's testimony, which Judge Crabb rejected. She concluded that Neeley's identification of McCauley showed he had indeed seen McCauley during the assault, and she did not find Richardson's explanation of events plausible. This court cannot say that the credibility determination was clearly erroneous, nor that her conclusion that the enhancement should apply constituted clear error.

## IV.

The district court's ruling that McCauley's arrest was supported by probable cause is affirmed, as is the application of a sentence enhancement for use of a dangerous weapon in connection with the offense of conviction.

10-6-11