NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 13, 2013
Decided June 27, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2756

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff Appellee,* <br><br> *v.* <br><br> BRUCE WHITTLER <br> *Defendant Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 10 CR 987 <br><br> Amy J. St. Eve, <br> *Judge.* |

**ORDER**

Bruce Whittler pleaded guilty to conspiracy to possess and distribute cocaine, *see* 21 U.S.C. §§ 846, 841(a)(1), and the district court sentenced him to 92 months' imprisonment. Whittler argues that the court miscalculated his guidelines imprisonment range by applying an upward adjustment for possessing a dangerous weapon. *See* U.S.S.G. § 2D1.1(b)(1). Because the court did not clearly err, we affirm the judgment.

In March 2009, Whittler began selling crack cocaine supplied by his cousin, Robert Jones. Jones would deliver the crack to Whittler's home. Jones was arrested in October 2009,

and after that the conspiracy ended. Whittler was not charged in federal court until November 2010, and when agents arrested him they recovered 3 toy guns painted to resemble real firearms. Whittler stipulated that the drug quantity was at least 50 grams, but the record does not show that drugs were recovered from him or his home.

At sentencing the government argued that Whittler should receive a 2 level increase under U.S.S.G. § 2D1.1(b)(1), which applies "[i]f a dangerous weapon (including a firearm) was possessed." Jones testified for the government that sometime during the summer of 2009—before their conspiracy ended—he was at Whittler's home delivering crack or collecting money for previous deliveries and asked to see Whittler's gun. Whittler presented the gun to Jones in his kitchen, where, according to Jones, Whittler sometimes received crack from him. Jones described handling the gun, which he described as small, black, heavy, and made of metal. Whittler possessed the gun, Jones opined, to protect his home from intruders, and he acknowledged that, because of their trusting and familial relationship, Whittler didn't need protection from him. When asked if he knew whether Whittler used the gun in connection with their drug dealings, Jones responded that he did not know.

To corroborate Jones's testimony that Whittler had possessed a gun during the conspiracy, the government played recordings of two intercepted telephone calls between Jones and Whittler. During the first of those calls, on August 7, 2009, Whittler discussed a recent burglary at his home. Whittler said:

> They climbed through my room window. Didn't take nothing else in the room. They went through my bottom drawer where I keep my money and all that stuff. They left my money in there. They left everything else in there. All they took was the scale, the TV, the PlayStation and all the video games.
>
> . . . .
>
>     They left the money. Everything else. . . . Right there in the drawer.... [T]he banger was sitting right there. You know what I'm saying? The clip. Everything. The Taser. Everything.

Jones asserted that, when Whittler mentioned the "banger," he was referring to the gun shown to Jones earlier that summer.

During the second recorded call, on August 29, 2009, Whittler told Jones that his cousin had been shot and was "tryin' to find something," which, Jones testified, meant that Whittler's cousin was trying to find a gun. Jones had replied that Whittler "better let him get that, what you got," meaning, according to Jones, that Whittler should give his cousin his gun. Whittler answered, "I'll let him get that one, you let me get that one that you got";

Jones explained that Whittler had meant he would give his cousin his gun only if Jones would replace it with his gun.

During cross examination Whittler's lawyer attacked Jones's credibility. She forced Jones to concede that he hadn't told the government about Whittler's gun until two weeks before the defendant's sentencing hearing, skipping opportunities to divulge that information when he first started cooperating with the government in October 2009 and when he testified before Whittler's grand jury the following year. She also highlighted Jones's testimony at sentencing that he too possessed a gun, which contradicted an earlier statement to the government denying that he ever owned a gun.

The government also introduced the toy guns recovered when Whittler was arrested to support the proposed increase for possession of a dangerous weapon. The prosecutor acknowledged, however, that she had no idea when Whittler acquired those toys and thus inferring a connection to the conspiracy was difficult because they were recovered so long after it had ended.

Whittler did not testify or present any evidence, but defense counsel argued that the government had failed to show that he possessed a gun in connection with the drug conspiracy. First, she argued that the government could not meet (what she insisted was) its burden by showing only that Whittler talked about a gun during the course of the conspiracy. Next, she argued that, even if Whittler did have a gun, a connection between the gun and the conspiracy was "clearly improbable," *see* U.S.S.G. § 2D1.1 cmt. n.11, because, she asserted, (1) the burglary discussed during the August 7 telephone call had not occurred at Whittler's home, but rather at his girlfriend's home, and (2) Whittler showed the gun to Jones as a trusted friend and not as part of a drug transaction. The government countered that Whittler's friendship with Jones was irrelevant because, the prosecutor argued, Whittler sold crack to his own customers. Whittler's possession of the gun fit within the rationale for the upward adjustment, the prosecutor continued, because there is an increased danger when crack deals are made in close proximity to guns.

The district court applied the 2 level increase. Earlier during the sentencing hearing, while ruling on an evidentiary objection to the drug quantity, the court had explained that it would not credit any uncorroborated statements from Jones because his testimony at the sentencing hearing and earlier before the grand jury had been rife with inconsistencies. Still, the court reasoned that the August 7 call strongly corroborated Jones's testimony that Whittler had possessed a gun during the conspiracy. Whittler had told Jones that the burglar "left the banger" but took the scale, which, the judge explained, "is direct evidence of his involvement in the conspiracy and having drug paraphernalia at the home where the weapon was, by his own acknowledgment." The court added that the August 29 call further corroborated Jones's testimony that Whittler had kept a gun near

where he kept his drugs and money. And so it was not clearly improbable, the judge concluded, that the gun was connected to the offense. Jones's testimony plus the calls were sufficient to support the increase, the court decided, and thus it declined to address the toy gun argument.

On appeal Whittler contests the application of § 2D1.1(b)(1). The adjustment applies "[i]f a dangerous weapon (including a firearm) was possessed," U.S.S.G. § 2D1.1(b)(1), and the commentary spells out that the increase "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense," *Id.* § 2D1 .1 cmt. n.11; *see United States v. Perez,* 581 F.3d 539, 546 (7th Cir. 2009); *United States v. Idowu,* 520 F.3d 790, 793 (7th Cir. 2008). "Individuals who do no more than conspire to distribute narcotics are nonetheless eligible for the enhancement, so long as they possess a firearm in the course of the conspiracy." *United States v. Cashman,* 216 F.3d 582, 587 (7th Cir. 2000). For § 2D1.1(b)(1) to apply, the government needed to prove by a preponderance of the evidence that Whittler had possessed a weapon during the drug conspiracy. *See United States v. Rollins,* 544 F.3d 820, 837 (7th Cir. 2008); *United States v. Martin,* 287 F.3d 609, 617 (7th Cir. 2002); *Cashman,* 216 F.3d at 587. Proof of possession would then shift to Whittler the burden of demonstrating that a connection between the gun and the conspiracy was clearly improbable. *See* U.S.S.G. § 2D1.1(b)(1) & cmt. n.11; *United States v. McCauley,* 659 F.3d 645, 652 (7th Cir. 2011); *United States v. Are,* 590 F.3d 499, 526 (7th Cir. 2009).

Whittler first argues that the government did not prove that he possessed a weapon. The core of his argument is that Jones was unreliable, and so the district court should not have relied on his testimony without corroboration. And though the court concluded that the August 7 and 29 phone calls *did* corroborate Jones's testimony, Whittler contends that the August 7 call—most heavily relied on by the court—does not sufficiently corroborate Jones's testimony because Whittler never mentioned drugs and there is no evidence that the money discussed was connected to drug sales.

Whittler is wrong about the import of the phone calls, though, in any event, his legal argument is unfounded. At sentencing a district court may rely entirely on uncorroborated testimony, *see United States v. Johnson,* 489 F.3d 794, 797 (7th Cir. 2007); *United States v. Galbraith,* 200 F.3d 1006, 1012 (7th Cir. 2000), or credit some but not all portions of a witness's testimony, *see United States v. Smith,* 674 F.3d 722, 734 (7th Cir. 2012). We will accept a judge's credibility finding unless it is "so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Stewart,* 536 F.3d 714, 720 (7th Cir. 2008) (quotation marks and citation omitted). Here, Jones testified that he was at Whittler's home on drug business when the defendant showed him a gun. There is nothing inherently unbelievable about that statement. To show that the district court was clearly erroneous for crediting Jones's testimony about seeing Whittler's gun, Whittler needed to provide evidence demonstrating that Jones was inaccurate. *See United States v. Sainz Preciado,* 566 F.3d 708, 713 (7th Cir. 2009).

He did not do so at sentencing and on appeal has not offered a compelling reason to disturb the credibility finding made by the court, which is in the best position to evaluate the credibility of a witness who offers conflicting testimony. *See Morisch v. United States*, 653 F.3d 522, 529 (7th Cir. 2011); *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010) (noting that credibility finding can "virtually never be clear error").

And aside from Jones's testimony, the court concluded that Whittler's admission to having a "banger" during the August 7 call, on its own, provided "direct evidence of his involvement in the conspiracy and his having drug paraphernalia at the home where the weapon was." Whittler never contested Jones's assertion that banger meant gun, and thus, in addition to sufficiently corroborating Jones's testimony, the August 7 call gave the court an independent ground to conclude that Whittler possessed a weapon during the conspiracy. *See United States v. Johnson*, 643 F.3d 545, 551–52 (7th Cir. 2011) (approving district court's reliance on discussion of crack during intercepted phone calls to make drug quantity finding; remanding to consider crack to powder cocaine sentencing disparity); *United States v. Oros*, 578 F.3d 703, 712 (7th Cir. 2009) (finding no clear error where, after defendant attacked principal witness's credibility, district court credited that witness's testimony in light of corroborating evidence).

Whittler also argues that, even if the government met its burden, he demonstrated that a connection between his gun and the conspiracy was clearly improbable. Whittler contends that Jones's testimony establishes that he retrieved his gun not as part of a drug transaction but simply to show it to a close relative. (Id.) Whittler further asserts that drugs and guns typically must be found to apply § 2D1.1(b)(1) and, since authorities recovered neither from his home, the district court erroneously applied the increase based on the "mere talk of weapons." (Id. at 26–27.)

The government presented evidence through Jones and two recorded phone calls, which the district court relied on, that Whittler kept a gun and drug paraphernalia in the same home. Instead of presenting contradictory evidence, defense counsel argued that Jones's concessions that he and Whittler enjoyed a trusting relationship and that fear did not infiltrate their drug related interactions proved that "[t]here is no reason why a gun would be involved in any kind of transaction." But this reasoning, which presumes that Whittler possessed the gun only on the single occasion where he showed it to Jones, is frivolous. Jones's testimony was offered to prove the *existence* of the gun, not its connection to Whittler's dealings with Jones. That Whittler and Jones got along does not mean that a connection between the gun and Whittler's drug sales to his own customers was clearly improbable. *See United States v. Orozco*, 576 F.3d 745, 752 (7th Cir. 2009) (concluding that absence of evidence that defendant used gun during drug transaction does not make it clearly improbable that gun was connected to conspiracy); *Cashman*, 216 F.3d at 588 (concluding that upward adjustment was proper despite no evidence that defendant sold

drugs where gun was found or that he carried gun while making drug transactions; no evidence suggested that gun and drug paraphernalia being found together was coincidental). Whittler supplied no competing explanation for the gun, and thus the district court could not have clearly erred by concluding that a connection between the gun and the conspiracy was not clearly improbable. *See United States v. Rea,* 621 F.3d 595, 607 (7th Cir. 2010); *United States v. Womack,* 496 F.3d 791, 798 (7th Cir. 2007); *United States v. Olson,* 450 F.3d 655, 684–85 (7th Cir. 2006).

Finally, although Whittler asserts that physical recovery of guns, drugs, or both is needed to apply § 2D1.1(b)(1), nothing in the language of the guideline, the relevant commentary, or the decisions of this court supports his position. This court has found statements or testimony about gun possession adequate to support the increase. *See United States v. Moreland,* 703 F.3d 976, 990 (7th Cir. 2012) (upholding enhancement based on statements that defendant's sister followed his instructions to hide gun and drugs before police arrived); *United States v. Strode,* 552 F.3d 630, 632, 636 (7th Cir. 2009) (concluding that testimony from coconspirators who saw defendant with gun was sufficient to support upward adjustment even though no gun or drugs were seized directly from defendant). So to the extent that Whittler is asking us to impose a higher evidentiary standard for applying § 2D1.1(b)(1), we reject that argument.

AFFIRMED.