In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 13-3397

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

JUSTIN EDWARDS,

*Defendant-Appellee*.

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 13-cr-56-bbc — **Barbara B. Crabb**, *Judge*.

---

ARGUED APRIL 17, 2014 — DECIDED OCTOBER 3, 2014

---

Before MANION, SYKES, and TINDER, *Circuit Judges*.

SYKES, *Circuit Judge*. Justin Edwards was indicted on federal gun charges after he was pulled over on suspicion of driving a stolen vehicle and the police found a sawed-off shotgun in the car. Moments before the stop, his girlfriend had called 911 to report that Edwards had just stolen her car. A nearby officer heard dispatch, spotted the car, and initiated a traffic stop. Sure

enough, Edwards was behind the wheel. He did not have a valid driver's license, could not produce the vehicle's registration, and was evasive about whether he had his girlfriend's permission to drive the car, so the officer placed him under arrest. A subsequent search of the car revealed the sawed-off shotgun on the floor behind the front passenger seat. Edwards admitted the gun was his.

Edwards was charged with possession of a firearm as a felon and possession of an unregistered short-barreled shotgun. He moved to suppress the gun, arguing that the warrantless search of the car violated his rights under the Fourth Amendment. The district court granted the motion, and the government appealed. *See* 18 U.S.C. § 3731.

We reverse. Under *Arizona v. Gant*, 556 U.S. 332, 351 (2009), a warrantless search of a vehicle incident to the arrest of one of its occupants requires reason to believe that the vehicle contains evidence of the offense of arrest. Here, Edwards was arrested for (among other possible offenses) driving a vehicle without the owner's consent; it was entirely reasonable to believe that evidence of the car's ownership—its registration or title, for example—would be found in the car. The search was likewise valid under the automobile exception because there was probable cause that evidence of a crime—again, the crime of driving a vehicle without the owner's consent—would be found in the car.

## I. Background

In the early morning hours of June 10, 2012, Veronica Fernandez called 911 to report that she and her boyfriend, Justin Edwards, had just had "a big argument" and he stole her car—a gray Mitsubishi Eclipse—and was driving away from her home in Ashland, Wisconsin. An Ashland police dispatcher broadcast the reported auto theft and described the car. Sergeant Dan Pufall, who knew both Fernandez and Edwards from prior police contacts, was on duty in the area and heard the broadcast. He spotted the Mitsubishi almost immediately. The car had no license plates or temporary tags, and Edwards was behind the wheel.

Sergeant Pufall initiated a traffic stop, approached the driver's side, and asked Edwards for his license and registration. Edwards didn't have either. Pufall asked him, "Whose car is it?" Edwards admitted that the car belonged to Fernandez. When Pufall again asked about registration, Edwards said the car was registered, checked the glove box for documentation, and told Pufall there were no registration documents in the car.

Pufall then asked Edwards what had happened that night. Edwards indicated that he was on his way to his mother's house because he and Fernandez had been "battling." He said that Fernandez had been itching for a fight, so he decided to leave. Pufall asked if he had permission from Fernandez to drive the car. Edwards equivocated: "I do, and I don't." When Pufall asked him to elaborate, Edwards said, nonresponsively, "You see, there's no plates on it."

Pufall then asked Edwards if he had a valid driver's license. Edwards said he didn't, but he wasn't clear about whether his

license was suspended or revoked, or whether he never had a license in the first place. At that point Pufall directed Edwards to get out of the car. Edwards complied. Pufall frisked him for weapons, placed him in handcuffs, and reported to the dispatcher that he had a suspect in custody. The dispatcher advised Pufall that Edwards had a probation hold for a burglary conviction. Ashland Police Officer Curtis Greene arrived at the scene to assist.

After securing Edwards in the back of his squad car, Sergeant Pufall searched the Mitsubishi and found a pouch containing marijuana and a pipe under the driver's seat. On the front passenger seat, he found a laptop computer and a bag containing tools. Because the car was a two-door, Pufall had to slide the front passenger seat forward to access the back seat. There he found a sawed-off shotgun on the floor behind the front passenger seat. He found no vehicle registration, title, or other ownership documents in the car, though he later learned from his dispatcher that the car's last registered owner was Jeremy Strobel. Pufall's operating assumption was that Strobel had sold the car to Fernandez, but she had not yet registered it.

Further investigation confirmed that assumption. Fernandez had recently paid Strobel $2,500 for the car. She apparently intended for Edwards to use it even though he could not legally drive. She was planning to register the car in her name, but the title could not yet be transferred because there was a lien on the car for Strobel's unpaid child support.

Sergeant Pufall took Edwards to the Ashland County Sheriff's Department, and Officer Greene was tasked with

reuniting Fernandez with her automobile. Greene went to Fernandez's home, where she signed a victim affidavit, checking the box indicating "I gave no one permission to take the missing items indicated in this police report." The report, however, did not specify what property was missing. Greene then drove Fernandez back to the Mitsubishi. He asked her to search it and tell him which items in the car were hers and which were not. When this property inventory was completed, Greene released the car to Fernandez and she drove away.

At the jail Sergeant Pufall administered *Miranda* warnings and took a statement from Edwards, who admitted that he had not asked Fernandez for permission to take and drive the car and that both the gun and drugs were his. The next day, June 11, Investigator Gerald Katchka re-*Mirandized* Edwards and again questioned him. Edwards confirmed that the drugs and gun were his and explained the car's ownership history and the events of the previous day. He said that Fernandez had purchased the car for his use. He also said that her call to the police was the result of a drunken argument.

For purposes of the FBI's Uniform Crime Reporting system, the police report for Edwards's arrest lists the offense of arrest as "vehicle theft—auto" and the incident type as "auto theft." Another section of the report lists additional possible grounds for arrest, including the probation hold, unlawful possession of a firearm, drug possession, driving an unregistered car, and driving without a valid license.

Edwards was indicted in the Western District of Wisconsin for possession of a firearm as a felon, *see* 18 U.S.C. § 922(g)(1), and possession of an unregistered short-barreled shotgun, *see*

26 U.S.C. §§ 5841, 5845(a)(2), 5861(d). He moved to suppress the gun and his custodial statements, arguing that the warrant-less search of the vehicle violated his rights under the Fourth Amendment and his statements were the fruits of an unlawful search. The government countered with several arguments: the search was justified as a search incident to arrest and under the automobile exception; the evidence would have been inevita-bly discovered during the inventory-like search Greene conducted with Fernandez; and the officers were operating in good faith. A magistrate judge held an evidentiary hearing on the motion. Sergeant Pufall testified and explained that he had several grounds to search the car, one of which was to look for evidence of the vehicle's ownership.

The magistrate judge recommended that the district court grant the motion to suppress. First, the judge concluded that Edwards had a reasonable expectation of privacy in the contents of the car, giving him standing to challenge the search. Probable cause to arrest Edwards for auto theft was not in dispute, but the magistrate judge concluded that Sergeant Pufall lacked a reasonable belief that evidence of that crime would be found in the car. The judge reasoned that locating registration documents or other proof of ownership was irrelevant to determining whether Edwards had stolen the car. Edwards told Pufall that there were no registration documents in the car, so the judge thought there was "no need to look for something that wasn't there." The judge suspected that the officer had an ulterior motive: "Sgt. Pufall's testimony regarding his search for proof of ownership strikes the court as a post-hoc rationalization rather than an accurate characteriza-tion of his thought process at the time he searched the

Mitsubishi." In the judge's view, "Sgt. Pufall actually was of the opinion that Fernandez's 911 call gave him *carte blanche* to rummage through the Mitsubishi to see what Edwards was up to."

The magistrate judge went on to conclude that the search did "not pass muster as an inventory search" and rejected the government's arguments about inevitable discovery and good faith. The judge concluded as follows:

> [T]his is a case in which a veteran officer jumped to inaccurate legal conclusions that were favorable to his decision to search a stopped car. His motivation to search the car was to get a look inside to see what Edwards possessed. Hindsight shows that his instincts were good and I have no doubt that he thought he was operating within the bounds of the Fourth Amendment, but that does not make this an acceptable search.

Over the government's objection, the district court adopted the magistrate judge's recommendation. The court noted that "the idea that Pufall was searching for registration papers seems contrived. He had just arrested defendant for vehicle theft; defendant had told him he had no registration papers in the car; and Pufall himself believed that the car was owned by Fernandez." The court granted the suppression motion, and the government timely appealed. *See* 18 U.S.C. § 3731 (authorizing an appeal by the United States of an order suppressing or excluding evidence).

## II. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Gant*, 556 U.S. at 338 (internal quotation marks omitted). The district court concluded that the warrantless search of the Mitsubishi did not fall under any of those exceptions. The court's factual findings are not challenged; we review the court's legal conclusions de novo. *United States v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008).

Two exceptions to the warrant requirement are at issue here. The first authorizes a warrantless search of a vehicle incident to the arrest of one of its occupants: The "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search *or* it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351 (emphasis added). Because Edwards was handcuffed and sitting in the back of the police squad when Sergeant Pufall searched the Mitsubishi, only the second justification for a search incident to arrest is available here.

Another possible basis for the search is the automobile exception. The police do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity. *See United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010); *United States v. Williams*, 627 F.3d 247, 251

(7th Cir. 2010); *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009). "Probable cause exists when based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) (internal quotation marks omitted).

These two exceptions are interrelated, but not identical. The suspicion required for a vehicle search incident to arrest under *Gant* is keyed to the offense of arrest; the automobile exception is not tied to an arrest. The quantum of suspicion necessary to justify the search may also differ. *Gant* permits a search of a vehicle incident to an arrest if "it is *reasonable to believe* the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351 (emphasis added). The automobile exception requires probable cause that the vehicle contains evidence of criminal activity. The Court in *Gant* did not elaborate on the precise relationship between the "reasonable to believe" standard and probable cause, but the Court's choice of phrasing suggests that the former may be a less demanding standard. *See, e.g., United States v. Rodgers*, 656 F.3d 1023, 1028 n.5 (9th Cir. 2011) (noting that the *Gant* standard "appears to require a level of suspicion less than probable cause"); *United States v. Vinton*, 594 F.3d 14, 25 (D.C. Cir. 2010) ("Rather, the 'reasonable to believe' standard probably is akin to the 'reasonable suspicion' standard required to justify a *Terry* search.").

We do not need to decide whether the two standards are different. As we will explain, Pufall's search of the Mitsubishi

was valid under *Gant* as a search incident to Edwards's arrest and *also* under the automobile exception.

Pufall's search easily satisfies the requirements for a valid vehicle search incident to arrest under *Gant*. Edwards was arrested for (among other possible offenses) driving a vehicle without the owner's consent. *See* WIS. STAT. § 943.23. Fernandez had reported that Edwards stole her car after an argument. Edwards insists that Fernandez was not trustworthy; she had a history of alcohol abuse and lying to the police, and Sergeant Pufall knew it. Even so, Pufall didn't rely on the 911 call alone; he questioned Edwards about the key elements of Fernandez's story before making the arrest. Edwards confirmed that he and Fernandez had been "battling" that night, and he also admitted that the car belonged to Fernandez. When Pufall asked whether he had her permission to drive the car, his response—"I do, and I don't"—was equivocal and suspicious. Everyone agrees that these facts supplied probable cause to arrest Edwards for the crime of driving a vehicle without the owner's consent.

It's true that Edwards could have been arrested for other offenses too. He was driving an unregistered car, he did not have a valid driver's license, and he was subject to a probation hold for a burglary conviction. Edwards maintains that he was actually arrested not for auto theft but for driving without a valid license. It's unclear why this argument makes any difference. *Gant* did not indicate whether the "offense of arrest" is limited to the crime for which the defendant was "actually arrested" or includes other crimes that the officer had probable cause to believe occurred. Justice Scalia's concurrence

in *Gant* suggests both would qualify. 556 U.S. at 353 ("I would hold that a vehicle search incident to arrest is *ipso facto* 'reasonable' only when the object of the search is evidence of the crime for which the arrest was made, or of another crime that the officer has probable cause to believe occurred.").

Either way, the evidence is clear that Edwards was arrested for driving a vehicle without the owner's consent and *perhaps also* for driving without a valid license. Edwards was pulled over on suspicion of driving a car that had just been reported stolen. Sergeant Pufall's investigation initially focused on the stolen-vehicle report. His questions to Edwards were aimed at confirming ownership of the car and determining whether Edwards had permission to drive it. Pufall referred to the stolen-vehicle report while handcuffing Edwards; he learned of the probation hold only after notifying his dispatcher that he had made an arrest. The police report listed the incident type as "auto theft." A suspect can, of course, be arrested for multiple crimes—here, apparently, for driving a vehicle without the owner's consent *and* driving without a valid license. When that's the case, the police can search a vehicle incident to arrest if they have reason to believe that the vehicle contains evidence of *any* of the offenses of arrest. Nothing in *Gant* prohibits this.

And it was entirely reasonable to believe that evidence of the offense of driving a vehicle without the owner's consent would be found in the Mitsubishi. Evidence establishing the vehicle's ownership is obviously relevant to that crime. *See* § 943.23(2) ("[W]hoever intentionally takes and drives any vehicle without the consent of the owner is guilty of a Class H

felony."). Edwards argues that looking for proof of ownership was unnecessary and irrelevant because the real issue was *consent*—i.e., whether Fernandez gave him permission to drive the car. His premise seems to be that searching for evidence of ownership was forbidden once Edwards acknowledged that Fernandez owned the car. That's an incorrect premise. Evidence of a vehicle's ownership is *always* relevant to the crime of driving a vehicle without the owner's consent; registration and title documents are evidence of ownership and are often kept in a car. That's enough for a valid vehicle search incident to Edwards's arrest.

The district court and magistrate judge were heavily influenced by the fact that Edwards checked the glove compartment and told Pufall that no registration papers were in the car. That's not a sound basis for suppression. Nothing turns on Edwards's statement. Police officers are not required to accept a suspect's word that no evidence of a crime is contained within a car. Sergeant Pufall did not have to settle for Edwards's assurances but could look for himself as long as it was reasonable to believe that the car would contain evidence of the crime of arrest. That standard was satisfied here.

For similar reasons, this search also fits comfortably within the automobile exception. Under the circumstances, there was probable cause—not just "reason to believe"—that the car would contain evidence of a crime. Again, evidence of a vehicle's ownership is always relevant to the crime of driving a vehicle without the owner's consent, and ownership documents are often kept within a car. When a car is reported stolen and is recovered, the police have probable cause to look in the

car for some evidence of ownership—especially so here, where the car lacked any license plates.

Echoing the decisions of the magistrate judge and district court, Edwards argues that Sergeant Pufall was not actually looking for proof of ownership but was searching for evidence of other crimes because he knew that his suspect had a criminal history. This amounts to an argument that the search was pretextual—Pufall's claim that he was searching for evidence of ownership was merely an *ex post* rationalization, an excuse to rifle through Edwards's possessions looking for general evidence of criminality. Indeed, the magistrate judge wrote that Pufall "primarily was motivated to search the Mitsubishi in order to do a spot check on Justin Edwards, a well-known habitual criminal." The district court agreed, writing that Pufall's explanation for the search seemed "contrived."

These observations, and Edwards's pretext argument, are misplaced in the Fourth Amendment context. The reasonableness of a search does not depend on the officer's subjective motivations; the inquiry is, of course, *objective. See, e.g., United States v. Tinnie*, 629 F.3d 749, 753 (7th Cir. 2011) ("[I]n judging the constitutionality of a search or seizure, courts must look at the facts objectively."); *see also Whren v. United States*, 517 U.S. 806, 812 (1996) ("Not only have we never held, outside the context of inventory search or administrative inspection … , that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary."). We "look to the record as a whole to determine what facts were known to the officer and then consider *whether a reasonable officer in those*

*circumstances* would have been suspicious." *Tinnie*, 629 F.3d at 753 (internal quotation marks omitted); *see Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) ("We ask whether the circumstances, viewed objectively, justify [the challenged] action. If so, that action was reasonable *whatever* the subjective intent motivating the relevant officials.").

So the suppression decision was based on a legal error; Sergeant Pufall's subjective intent does not matter. The relevant inquiry is whether a reasonable officer, knowing what this officer knew, would have probable cause to believe that the car would contain evidence of criminal activity. The answer to that question in this case is obviously "yes."

The search of the Mitsubishi was valid under the automobile exception *and* as a search incident to Edwards's arrest. Accordingly, it was error for the district court to grant the suppression motion.

REVERSED and REMANDED.