In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1530

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERICK CHARLES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 CR 883 — **James B. Zagel**, *Judge.*

ARGUED DECEMBER 10, 2014 — DECIDED SEPTEMBER 14, 2015

Before EASTERBROOK, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Early one spring evening a frightened woman called 911 to report an unfolding road-rage incident on Chicago's north side. The woman reported that she was in her car in a narrow alley when another driver blocked her exit, got out of his car, and was approaching her in a menacing manner, screaming obscenities. A moment later the woman called back and said the man was now

violently pounding on her car window and had displayed a gun.

A Chicago police officer responded to the scene and saw a car parked at the entrance to the alley. The driver—later identified as Erick Charles—emerged from the car. He matched the caller's description of the man with the gun, so the officer detained and frisked him. Finding nothing, the officer searched the car and discovered a loaded handgun. Charles was indicted for possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1).

The prosecution was marred by some procedural irregularities. A week before trial, long after the pretrial-motion deadline lapsed, Charles moved to suppress the gun. A few days later, the parties notified the court that Charles wanted a bench trial. The judge suggested consolidating the (untimely) suppression motion with the bench trial. Both sides initially agreed, but Charles's lawyer changed his mind and asked to keep the two proceedings separate. The judge denied that request. As planned, Charles waived his right to a jury. The judge held a combined suppression hearing and bench trial, admitted the gun, and found Charles guilty.

Before sentencing Charles changed counsel several times and filed multiple posttrial motions challenging the admission of the gun. In the meantime, the case was transferred to a new judge, who held a hearing and agreed that the gun should have been suppressed. But the judge declined to disturb the conviction, concluding that Charles would have been found guilty even without the gun in evidence. Charles was sentenced to 15 years in prison. He appeals, challenging the denial of suppression.

Despite the procedural missteps, we affirm the judgment. The suppression motion was properly denied. The officer had probable cause to search Charles's car for a gun based on the 911 caller's report and his own observations at the scene. As such, the search was permissible under the automobile exception to the Fourth Amendment's warrant requirement.

## I. Background

On May 9, 2008, two strangers found their cars at an impasse in a narrow alleyway at 1607 W. Howard in Chicago. One driver would have to back out for either to get through. As the situation escalated, Nedra Summerise, one of the drivers, called 911 twice. In her first call, she reported that the other driver had gotten out of his car and was approaching hers in a threatening manner, yelling obscenities. In her second call, she told the operator that the man had reached her car, was violently pounding on the driver's side window, and had pulled his shirt back to reveal a gun in his waistband. The dispatcher broadcast this information over the police radio, sending patrol officers to investigate "a person with a gun" described as "a male black with a gun on his side, [who] has a plaid shirt and blue jeans, he is light complexion, [and] he's also bald." The dispatcher also noted that the caller "is in the alley" and "says that she is afraid."

Two officers arrived at the scene within minutes. The first was Sergeant John Baranowski, who reported his arrival just two minutes after the dispatch. According to his testimony at trial, Sergeant Baranowski saw a man behind the wheel of a red Ford Taurus parked three feet from the curb next to the

alley. The driver, Erick Charles, emerged from the car, and the officer saw that he matched the description of the man with a gun. Leaving his car door open, Charles began walking toward the officer. As he approached, Sergeant Baranowski saw a bulge under Charles's clothing and decided to detain, handcuff, and frisk him. The bulge turned out to be a cell-phone holder.

Sergeant Peter Koconis arrived a moment later and assumed responsibility for Charles while Baranowski investigated further. Summerise was still at the scene. Sergeant Baranowski testified that he spoke with her and she confirmed that Charles was the man with the gun who had threatened her. According to Summerise's testimony, however, the officer simply "motioned [her] to come out of the alley" and did not question her at this point in the investigation. Regardless, after frisking Charles, Sergeant Baranowski looked through the open driver's side door of the red Taurus and spotted a green gun case. He opened the case and found a loaded semiautomatic pistol and an extra clip of ammunition. He also recovered a box of 9-millimeter rounds from the area between the driver's and passenger's seats. Charles was arrested and charged with possession of a firearm by a felon. *See* § 922(g)(1).[1]

The case was initially assigned to Judge James Zagel. After several extensions of time, Judge Zagel set June 26, 2009, as the deadline for pretrial motions and November 16, 2009,

---

[1] Charles has a long felony record, including convictions for two separate armed robberies, aggravated battery, possession of a controlled substance with intent to distribute, delivery of a controlled substance, and impersonating a police officer.

as the trial date. On November 10, just one week before trial, Charles's counsel moved to suppress the gun and the statements Charles had made to the police officers. The motion asserted that the officers lacked probable cause to search the car and hadn't given Charles *Miranda* warnings before questioning him. The government responded that the motion was untimely.

As it turned out, Judge Zagel was unavailable to handle the trial, so Judge Wayne Andersen agreed to preside in his place. Judge Andersen announced that he would hold a hearing on the (untimely) suppression motion immediately before trial.

The day before trial, Charles's counsel informed the prosecutor that his client wanted a bench trial. Judge Andersen welcomed the additional flexibility of a bench trial and proposed consolidating the suppression hearing and the trial. The prosecutor called this "a good idea" and said "[t]here is really no reason to go separately." The judge paused to consider one possible concern:

> [O]ftentimes after people lose a suppression [hearing], they then decide to plead. Sometimes conditionally. Sometimes absolutely. That would affect timely plea and acceptance of responsibility. … I don't think at this point in time, since we are ready to go through all the work, it should prevent the defendant from electing that option.

To address the potential loss of guidelines credit for a timely guilty plea, the judge assured Charles that if he lost the suppression motion and thereafter wanted to plead guilty,

the guilty plea would be treated "just as if he had done that between the suppression hearing and trial."

Charles's lawyer didn't object in principle but wanted to "think about it a little bit more." The next day he had a change of heart and asked to separate the suppression hearing from the bench trial. Judge Andersen denied that request, saying that he had spoken with other judges and concluded that if the defendant opted for a bench trial, then the two proceedings could safely be conducted together. The judge noted that he was going to hear all the evidence anyway, regardless of whether or not he ultimately decided to suppress the gun or the statements. Charles then formally waived his right to a jury trial and the proceedings began.

Summerise testified that Charles blocked her exit from the alley, approached her car yelling obscenities, and began to "hammer" at the driver's side window of her car with his fists. She testified that he lifted his shirt to reveal a handgun with a silver handle sticking out of his waistband. The officers also testified, explaining their investigation at the scene, the search of the red Taurus, and their questioning of Charles. The judge suppressed Charles's statements but admitted the gun, the gun case, and the ammunition. Following closing arguments, the judge found Charles guilty and set a January 15, 2010 deadline for posttrial motions.

A long delay ensued. Charles filed multiple posttrial motions seeking judgment of acquittal or a new trial—some by counsel, others pro se, and most *after* the deadline for posttrial motions had expired. By the time of the motion on which this appeal is largely based (filed on October 12, 2012), Charles was on his fourth set of attorneys. In the

meantime, Judge Andersen retired from the bench. The case returned to Judge Zagel.

In the October 12 motion, Charles argued that the gun and ammunition should have been suppressed because the search of his car was impermissible as a search incident to a *Terry* stop and the gun case was not "in plain view." On May 24, 2013, Judge Zagel held an evidentiary hearing on the motion. He continued the hearing and took additional evidence on June 28. On September 6 he rendered a decision, ruling that the gun and related evidence should have been suppressed because the gun case wasn't unmistakably a gun case and the police lacked probable cause to open it. He deferred judgment on whether the suppression error warranted a new trial.

On October 4, 2013, Judge Zagel denied the motion for a new trial. For starters, he said he was now "inclined to believe that … [the motion was] untimely." Alternatively, he concluded that the admission of the gun and related evidence was harmless because Charles would have been found guilty based on Summerise's testimony alone.

Charles moved for reconsideration, but this motion too was denied. The judge imposed a sentence of 15 years and this appeal followed.

## II. Discussion

Charles argues that Judge Zagel should have granted a new trial after concluding that the gun and ammunition should have been suppressed. We disagree, although our reasons differ from Judge Zagel's. There was no suppression error in the first place. This case falls squarely within the

automobile exception to the warrant requirement, so the gun and ammunition were properly admitted at trial.

Warrantless searches are per se unreasonable under the Fourth Amendment unless they fall within "a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks omitted). As we've noted, at issue here is the automobile exception. First recognized in *Carroll v. United States*, 267 U.S. 132 (1925), and clarified in *United States v. Ross*, 456 U.S. 798 (1982), the automobile exception permits the police to search a vehicle if there is probable cause to believe it contains evidence of criminal activity. *Gant*, 556 U.S. at 347. The authority to search encompasses any area of the vehicle where evidence of the crime might be found. *Id.*

"[T]he scope of the warrantless search authorized by th[e automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant." *Ross*, 456 U.S. at 825. So if there is probable cause to search a vehicle for contraband or evidence of a crime, a police officer may search containers within the vehicle that could hold such evidence. *See, e.g.*, *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014) (search for evidence relating to ownership of car after its theft was reported); *United States v. Nicksion*, 628 F.3d 368, 377 (7th Cir. 2010) (search for evidence of drug transactions seen during surveillance of defendant).

"Probable cause exists when based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *Edwards*, 769 F.3d at 514 (internal quotation marks omitted). This is an objective determination made without regard to an officer's motive, but with an

eye toward additional knowledge the officer may have had as a result of his training and experience. *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006).

Here, the dispatcher's report of Summerise's 911 call establishes beyond dispute that Sergeant Baranowski had probable cause to believe that Charles was carrying or had very recently carried a handgun. At the time, Chicago comprehensively banned handgun possession, CHICAGO, ILL., MUNICIPAL CODE §§ 8-20-040(a), 8-20-050(c) (2009); *see generally McDonald v. City of Chicago*, 561 U.S. 742, 750–51 (2010), and Illinois prohibited carrying a gun in public unless it was "unloaded and enclosed in a … container," 720 ILL. COMP. STAT. 5/24-1(a)(4)(iii) (2008); *see generally Moore v. Madigan*, 702 F.3d 933, 934 (7th Cir. 2012) (discussing the statute).[2]

The dispatcher reported the gist of Summerise's 911 call and directed responding officers to look for "a person with a gun" in the alley at the West Howard Street address. The dispatcher also gave a detailed description of the suspect and reported that the caller, Summerise, was in the alley and "says that she is afraid." Just two minutes later Sergeant Baranowski arrived on the scene and saw Charles, who matched the description, emerging from a car parked at the entrance to the alley. A reasonable officer would have considered it likely that Charles had stashed the gun—evidence of these crimes—in his car.

---

[2] The government also argues that there was probable cause to believe that Charles had threatened Summerise with a gun. We find it unnecessary to address this argument.

It's true that Chicago's handgun ban was later invalidated, *see McDonald*, 561 U.S. at 791, as was the Illinois concealed-carry law, *see Moore*, 702 F.3d at 942. But the "[p]olice are charged to enforce laws until and unless they are declared unconstitutional," so a search based on a violation of a law later declared unconstitutional does not necessarily violate the Fourth Amendment. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Although Charles could not be punished for violating an unconstitutional statute or ordinance, unless a law is "grossly and flagrantly unconstitutional," a police officer conducting a search may reasonably rely on it for Fourth Amendment purposes. *Id.*

Here, there was ample probable cause to believe that Charles had violated the Chicago ordinance and Illinois statute and that evidence of those crimes could be found in his car. Accordingly, the search of the car was not unreasonable. Judge Andersen properly denied the suppression motion.

Charles also claims he is entitled to a new trial because Judge Andersen held the suppression hearing and trial concurrently. This argument invokes Rule 12 of the Federal Rules of Criminal Procedure, which provides that "[t]he court must decide every pretrial motion *before* trial unless it finds good cause to defer a ruling." FED. R. CRIM. P. 12(d) (emphasis added). Judge Andersen did not make a specific finding of good cause to defer ruling on the suppression motion. This step should not be overlooked, especially where suppression of physical evidence is at stake. Deferring a ruling in this context risks serious prejudice to the prosecution and defense alike.

One obvious problem is that a defendant may wish to testify at the suppression hearing but not at trial. Delaying a suppression decision also implicates the timeliness of a potential guilty plea and the availability of sentencing credit for acceptance of responsibility, as the judge recognized in this case.

Even more problematic is the interplay of the Double Jeopardy Clause and mistaken suppression rulings. If pivotal evidence were improperly excluded during (rather than before) trial, the government could challenge the exclusion only by petition for a writ of mandamus and never after an acquittal. Mandamus is appropriate during a criminal trial only very rarely, when "a trial judge's ruling … is so patently unsound as to exceed the legitimate bounds of judicial power." *In re United States*, 614 F.3d 661, 663 (7th Cir. 2010) (granting a writ of mandamus where the evidentiary ruling was based on "implausible speculation" by the judge of criminal obstruction of justice by the government). Ordinary legal errors are unlikely to meet this standard.

A mandamus petition as a remedy for an evidentiary error during trial seems particularly inappropriate where, as here, the prosecutor consented to the judge's decision to merge the suppression hearing and the trial, thus foreclosing a government appeal from a pretrial decision excluding evidence. *See* 18 U.S.C. § 3731 (permitting interlocutory government appeals of evidentiary rulings before the defendant is placed in jeopardy). We find it difficult to understand why the government consented to consolidation here, where the "good cause" prerequisite of Rule 12(d) was neither addressed nor met.

The judge had two options when confronted with the tardy suppression motion: hold a hearing and address and decide the merits of the suppression issue before trial, or deny the motion as untimely.[3] To defer ruling required good cause. That finding was never made.

Although the court erred, Charles hasn't demonstrated any prejudice. He does not claim that he would have testified at a separate suppression hearing. And in any case, probable cause to search the car was conclusively established by the details of the dispatch and Sergeant Baranowski's observations at the scene. Charles contends that he "waived his Sixth Amendment right to a jury trial without a full understanding of the evidence against him." But he requested a bench trial *before* the first hearing at which the parties addressed the motion to suppress—and the timing of its consideration—so we don't see how anything would have changed if he had known the result of his suppression motion earlier. It's no surprise that having made his request for a bench trial when he did, Charles now emphasizes that he isn't challenging the validity of his jury waiver.

Charles also suggests that his opening statement and closing argument would have been prepared differently if he had known the result of the suppression motion. But the evidence against him was overwhelming; we're satisfied that he would have been convicted no matter what his lawyer said in opening statement and closing argument.

---

[3] A motion to suppress evidence filed after the court's deadline may be denied as untimely, but a court may consider it on a showing of "good cause." FED. R. CRIM. P. 12(c)(3). Charles filed his motion on the eve of trial on November 10, 2009, more than four months after the June 26 deadline.

Finally, Charles says that he might have considered pleading guilty if the judge had ruled on his suppression motion before trial. But there is no possibility that a guilty plea could have produced a lighter sentence for the single count charged in the indictment. Charles has at least three violent felony or serious drug convictions (more, actually), which triggered application of the enhanced penalties in the Armed Career Criminal Act, including its 15-year minimum sentence. 18 U.S.C. § 924(e)(1). Indeed, Charles was sentenced to the minimum 15-year term, and he hasn't described a chain of events that could have plausibly produced a lesser sentence in his case. Accordingly, although the judge erred by deferring a ruling on Charles's suppression motion without good cause, the error was harmless.

AFFIRMED.