In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3409

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OTTRIEZ SANDS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 295 — **Amy J. St. Eve**, *Judge.*

ARGUED SEPTEMBER 25, 2015 — DECIDED NOVEMBER 4, 2015

Before WOOD, *Chief Judge,* and BAUER and EASTERBROOK,
*Circuit Judges.*

BAUER, *Circuit Judge.*  Defendant-appellant, Ottriez Sands
("Sands"), was found guilty by a jury of being a felon in
possession of a firearm in violation of 18 U.S.C. § 922(g)(1).
Sands appeals the district court's order denying his motion to
quash his arrest and suppress the evidence derived therefrom.
He claims the search and seizure violated his Fourth Amend-
ment rights. Sands also argues that the district court erred in

prohibiting him from making a particular argument to the jury during closing argument. We agree with the district court's rulings and affirm its judgment.

## I. BACKGROUND

In January 2012, Officer Perry Williams of the Chicago Police Department received information from a registered confidential informant that an individual whom the informant personally knew was selling narcotics out of a gold-colored car. On February 3, 2012, the informant told Officer Williams that the suspect was actively selling narcotics out of a gold-colored Toyota Camry with tinted windows in the area of 71st and Paxton. The informant gave Officer Williams the license plate number of the Camry and a physical description of the suspect.

Based on that information, Officer Williams drove to the area of 71st and Paxton and saw Sands seated in the driver's seat of a gold-colored Toyota Camry parked at 7102 South Paxton. Officer Williams parked his car about 30 feet away from the Camry on the south side of 71st Street and facing in the opposite direction of the Camry to conduct surveillance. From his position, Officer Williams turned around and looked over his shoulder to see the Camry and observe Sands.

While Officer Williams was conducting surveillance, Chicago Police Department Officers Kevin Kilroy, Matthew Darling, and Nathan Gadzik were nearby in a second vehicle. Their enforcement vehicle was parked in an area away from 71st and Paxton, out of sight of Sands's Camry. They were an enforcement team ready to perform an investigation or an arrest as needed by Officer Williams. The officers in the

enforcement vehicle could not see Sands's Camry and were not conducting surveillance of it.

About fifteen minutes later, Officer Williams saw Sands engage in a hand-to-hand transaction through the driver's side window of the Camry with another individual, later identified by police as Katon Hunter. Based on his training and experience, Officer Williams believed the hand-to-hand transaction was a narcotics transaction. He informed the enforcement officers via radio that a narcotics transaction had occurred and ordered them to arrest Sands. After receiving this information from Officer Williams, Officer Kilroy drove the enforcement vehicle from its hidden location down Paxton, against one-way traffic, and parked the enforcement vehicle at an angle to, and approximately two or three feet from, the front bumper of the Camry. Officer Kilroy saw Sands sitting in the driver's seat of the Camry.

Officer Kilroy testified that he saw Katon Hunter get out of the Camry from the front passenger seat and run into the nearby Family Dollar store. Officer Darling testified that as they drove toward the Camry, he saw a person standing outside the passenger side of the Camry, who also went into the Family Dollar store.

All three officers left the enforcement vehicle; Officer Gadzik pursued Katon Hunter into the Family Dollar store, Officer Darling walked over to a red Monte Carlo parked in the area as a safety precaution, and Officer Kilroy approached the Camry. As he was walking towards the Camry, Officer Kilroy saw Sands through the Camry windshield holding a firearm in his right hand. He then saw Sands move the firearm

to the open center console. Officer Kilroy drew his firearm and ordered Sands to get out of the Camry. Sands did not immediately comply, and Officer Kilroy had to open the car door and remove Sands from the vehicle. Officer Kilroy patted Sands down to ensure that he had no weapons and passed Sands to another officer at the scene.

Officer Kilroy entered the Camry to locate the firearm that he had seen Sands holding. When he opened the center console it appeared empty, but he located Sands's firearm, containing live ammunition, and 10 to 15 bags of marijuana under a false floor in the center console.

A grand jury returned an indictment charging Sands with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). Prior to trial, Sands moved to quash his arrest and suppress evidence found in the Camry, arguing that both the search and seizure violated his Fourth Amendment rights. The district court denied Sands's motion.

The government moved *in limine* to preclude Sands from arguing to the jury that Katon Hunter was the one who placed the firearm into the center console of the Camry. After hearing the evidence presented during trial, the district court granted the government's motion. Although the district court precluded Sands from arguing to the jury that Katon Hunter was the one who placed the firearm in the center console, it allowed Sands to argue that the firearm was Katon Hunter's and not Sands. The case proceeded to the jury, which found Sands guilty.

## II. DISCUSSION

### A. Arrest and Search

We turn first to Sands's contention that the district court erred when it denied Sands's motion to quash his arrest and suppress evidence based on Fourth Amendment grounds. Sands argues that an arrest occurred at the moment when Officer Kilroy parked the enforcement vehicle in front of the Camry and that the arresting officer did not have probable cause at that time to arrest Sands. Sands further argues that Officer Kilroy's observations of Sands holding and placing the firearm into the center console of the Camry cannot be considered to support a probable cause determination, because those observations occurred after the impermissible seizure (the parking of the enforcement vehicle). Thus, Sands argues, those observations and the results of the search of the Camry should have been suppressed. We do not agree with Sands's contentions.

We review a district court's denial of a motion to suppress evidence under a dual standard: findings of fact are reviewed for clear error, while legal conclusions are reviewed *de novo*. *United States v. Freeman*, 691 F.3d 893, 899 (7th Cir. 2012) (citation omitted). Credibility determinations made by the district court are clearly erroneous only if they are "completely without foundation." *Id.* (citation omitted). If the district court's factual findings are supported by the record, we will not substitute our judgment for that of the district court, nor disturb such findings. *United States v. Packer*, 15 F.3d 654, 656 (7th Cir. 1994); *United States v. Adebayo*, 985 F.2d 1333, 1337 (7th Cir. 1993).

In reviewing the factual findings in this case, we decline to disturb the district court's factual and credibility determinations. The district court observed the officers testify at the hearing on Sands's suppression motion and found them to be credible. Further, the district court's factual findings are amply supported by the record.

Preliminarily, we note that Sands has forfeited the discrete issue of whether an arrest occurred at the moment Officer Kilroy parked the enforcement vehicle in front of Sands's Camry. *See, e.g.*, *United States v. Kelly*, 772 F.3d 1072, 1077–78 (7th Cir. 2014); *United States v. Murdock*, 491 F.3d 694, 698 (7th Cir. 2007).[1] Sands failed to raise this argument during his motion to suppress in the district court, and that forfeited the argument on appeal. *Kelly*, 772 F.3d at 1077–78. Because Sands has presented no good cause for the failure to preserve the argument for appeal, we are precluded from reviewing this discrete issue. *Id.*

Moreover, given the facts of this case, the parking of the enforcement vehicle without lights, siren, or guns drawn does not rise to the level of an arrest. *See, e.g.*, *United States v. Lechuga*, 925 F.2d 1035, 1037, 1040–41 (7th Cir. 1991) (two police vehicles "sandwiching" suspect's vehicle and forcing it to stop did not constitute arrest, and catalogue of police activity,

---

[1] It should be noted that contrary to Sands's contention, the holdings of *United States v. Kelly*, 772 F.3d 1072 (7th Cir. 2014) and *United States v. Murdock*, 491 F.3d 694, 698 (7th Cir. 2007) remain "good law" and unaffected by the relocation of Rule 12(e) to Rule 12(c)(3) as a result of the 2014 amendment to Federal Rule of Criminal Procedure 12. *See* FED. R. CRIM. P. 12(c)(3); FED. R. CRIM. P. 12 advisory committee's note, 2014 amendments.

including use of weapons, blocking in a vehicle, ordering suspect to lie on ground, use of handcuffs, not constituting arrest) (citations omitted). Further, an arrest occurs only once the suspect has submitted to law enforcement's show of authority. *California v. Hodari D.*, 499 U.S. 621, 625 (1991); *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011). Here, Sands did not initially comply with Officer Kilroy's order to get out of the Camry. The seizure occurred when Officer Kilroy physically removed Sands from the Camry and had him physically detained.

Nevertheless, the issues of forfeiture and whether an arrest occurred at the time of the parking of the enforcement vehicle are obviated by the fact that we must still determine whether the search and arrest were supported by probable cause, as Sands challenges the district court's ruling on his motion to suppress evidence and quash the arrest. Because we continue with a *de novo* review of the legal issues, we purposefully address the issues of forfeiture and the parking of the enforcement vehicle only in passing in the interests of brevity.

A warrantless arrest is constitutionally permissible if supported by probable cause; probable cause for an arrest exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbot v. Sangamon Cnty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citation omitted). To support a finding of probable cause, the officer need only have a belief that a crime occurred, not whether a crime actually occurred. *United States v. Muriel*, 418 F.3d 720,

724 (7th Cir. 2005). An officer's "trustworthy information" establishing probable cause for an arrest may include information provided by a confidential informant, as long as that information is reliable. *United States v. Levy*, 990 F.2d 971, 973 (7th Cir. 1993) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995) (citations omitted). The reliability of an informant's information may be established by the reliability of the informant in the past, corroboration by independent police work or observations, or by other means. *Gilbert*, 45 F.3d at 1166 (citation omitted).

Here, Officer Williams testified that the confidential informant was registered with the Chicago Police Department and had been "very reliable" in providing him with credible information for over six years. Based on the information provided by the informant, Officer Williams went to the area of 71st and Paxton and corroborated the information: the color of the car, the make and model of the car, the fact that the car had tinted windows, the location of the car, and the description of the individual sitting in the driver's seat. In addition, Officer Williams observed Sands engage in a hand-to-hand transaction through the driver's side window of the Camry, which Officer Williams believed, based on his training and experience, was a narcotics transaction. The confidential informant had previously told Officer Williams that an individual was dealing narcotics out of the Camry, and Officer Williams independently observed that conduct. Based on the reliable information known to him at the time, including his training and experience, Officer Williams believed Sands had engaged in an illegal

narcotics transaction. Officer Williams had probable cause at that time to arrest Sands. *See Abbot*, 705 F.3d at 714.

The information known by Officer Williams may be imputed to Officer Kilroy pursuant to the collective knowledge doctrine. The collective knowledge doctrine allows officers within an agency or officers from different agencies working together to effectuate constitutionally permissible searches and seizures. In other words, the doctrine "permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010) (citation omitted). Three elements must be met for the collective knowledge doctrine to apply: "(1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information–or the agency for which he works –must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive than would have been permissible for the officer requesting it." *Id.* at 252–53 (citation omitted).

Here, the collective knowledge doctrine applies. First, Officer Kilroy "act[ed] in objective reliance" on the information received from Officer Williams that Sands had engaged in a hand-to-hand narcotics transaction. Officer Kilroy's subjective thoughts or motivations are of no consequence in determining "objective reliance." *Id*. at 254–55. Once Officer Kilroy received the information from Officer Williams, Officer Kilroy acted by parking the enforcement vehicle in front of Sands's Camry, ordering Sands out of the vehicle, and when Sands did not

comply, getting Sands out of the vehicle and arresting him. There is no evidence that Officer Kilroy did not rely on the information received from Officer Williams. Second, as discussed above, Officer Williams, "the officer providing the information," had probable cause to arrest Sands based on his corroboration of the informant's information and his witnessing an illegal narcotics transaction. Third, because the arrest was supported by probable cause, Officer Kilroy's arrest of Sands was "no more intrusive" than had Officer Williams effected an arrest of Sands. The scenario at issue here is not that Officer Williams had only reasonable suspicion for a *Terry* stop, but Officer Kilroy effected an arrest. Rather, probable cause supported an arrest. Ultimately, because Officer Williams had probable cause to arrest Sands, Officer Kilroy had probable cause to arrest Sands.

As to the search of Sands's Camry, the vehicle exception provides that a warrantless search of a vehicle is constitutionally permissible if police have probable cause to believe the vehicle contains contraband or other evidence of illegal activity. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014); *United States v. Navarro*, 90 F.3d 1245, 1252 (7th Cir. 1996) (citations omitted). Probable cause to search a vehicle exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Officer Kilroy understood that the officers were conducting surveillance because the information received from the confidential informant was that Sands was selling narcotics out of his Camry. Additionally, Officer Kilroy had probable cause

to arrest Sands once he heard from Officer Williams that a hand-to-hand narcotics transaction had occurred. After Officer Kilroy parked the enforcement vehicle in front of Sands's Camry, Officer Kilroy saw Sands place a firearm in the center console of the Camry. Based on the information that Sands had just engaged in a narcotics transaction in his car and Officer Kilroy's own observation of Sands with a firearm, Officer Kilroy had probable cause to believe Sands's Camry contained contraband and/or evidence of a crime. *See Edwards*, 769 F.3d at 514. Therefore, the search of Sands's Camry falls within the vehicle exception and did not infringe on Sands's Fourth Amendment rights.

### B. Closing Argument

Sands's second contention on appeal is that the district court erred when it granted the prosecution's motion *in limine* to preclude Sands from arguing during closing argument that Katon Hunter placed the firearm in the center console of the Camry. The district court ruled that no evidence had been presented during trial to support Sands's argument that Katon Hunter placed the firearm in the center console. While the district court allowed Sands to argue during closing argument that the firearm belonged to Katon Hunter and/or that Katon Hunter ran from the firearm, it precluded Sands from going further and claiming Katon Hunter placed the firearm in the center console.

"Broad discretion is reposed in the trial court to control closing arguments and its discretion in this area will not be overturned absent a showing of clear abuse." *United States v. Grabiec*, 563 F.2d 313, 319 (7th Cir. 1977) (citation omitted). "It

is fundamental that counsel cannot rely or comment on facts not in evidence during closing argument." *United States v. Henry*, 2 F.3d 792, 795 (7th Cir. 1993) (citations omitted). A jury may only hear a defense theory "'that is supported by law and that has some foundation in the evidence.'" *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006) (quoting *United States v. Carter*, 910 F.2d 1524, 1531 (7th Cir. 1990)).

Here, no direct or circumstantial evidence was presented during the trial that Katon Hunter placed the firearm in the center console. There was no clear abuse on the part of the district court in precluding Sands from arguing that Katon Hunter placed the firearm in the center console. Sands was permitted to and did in fact argue to the jury that the firearm belonged to Katon Hunter, and when Katon Hunter ran from the Camry he ran from the firearm. The district court was within its discretion in limiting Sands's closing argument. *See White*, 443 F.3d at 587.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.