In the

# United States Court of Appeals
### For the Seventh Circuit

———————

No. 23-2259

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL A. DAVIS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 22-CR-22 — **Philip P. Simon**, *Judge.*

———————

SUBMITTED SEPTEMBER 5, 2024[*] — DECIDED OCTOBER 7, 2024

———————

Before SYKES, *Chief Judge*, and ST. EVE and LEE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. On February 22, 2022, police officers responded to a chilling 911 call from a fifteen-year-old in

———————

[*] We granted the joint motion to waive oral argument, and the appeal is therefore submitted on the briefs and the record. Fed. R. App. P. 34(a)(2)(C).

Gary, Indiana. The teenage caller reported that Michael Davis had threatened to kill her mother, was outside their home, and had an assault rifle in his car. She urged emergency dispatch to hurry, and relayed updates to the 911 operator as her family sought safety at the local police station.

Within ten minutes of the 911 call, police caught up with Davis, who was following the family's minivan. Officers arrested him and searched his vehicle, recovering a loaded, semi-automatic shotgun with an obliterated serial number.

Davis was subsequently charged with possessing a firearm illegally, in violation of 18 U.S.C. § 922(g). After unsuccessfully moving to suppress the shotgun, he pleaded guilty but reserved the right to appeal the suppression ruling.

Before us, Davis renews his contention that the warrantless search of his vehicle violated the Fourth Amendment, requiring the suppression of the shotgun. Because the search falls squarely within the search incident to arrest and automobile exceptions to the warrant requirement, we affirm the district court's denial of his motion.

## I. Background

In the wee hours of the morning of February 22, 2022, Michael Davis began beating and kicking at the door of his former girlfriend, A.C., and her four children.

Davis went to A.C.'s home to pick up some clothes he had left in the back of her minivan. A.C. answered the door but refused to return the clothes, demanding Davis first give her back some jewelry. Angered, Davis picked up a brick and gestured toward her minivan. A.C. called the police. An officer responded, declined to facilitate a property exchange, and instructed A.C. to file a report.

Davis left shortly after the police did, but his behavior continued to escalate. A.C. was pregnant, and Davis sent her a text message threatening to kill her baby. Fearful of Davis's increasing hostility, A.C. called off their plan to reconvene at the house to exchange the clothes and jewelry. She also instructed her children to call 911 if Davis came back.

Undeterred, Davis returned to the house as A.C. was preparing her kids for school. At 7:12 a.m., A.C.'s 15-year-old daughter called 911. Audibly distressed, she told the public safety officer that "there's a man here and he's trying to kill us." She urged the officer to "please hurry up." A.C.'s daughter explained that Davis had threatened her mom and had an assault rifle in his car. She described the clothes Davis was wearing and gave the officer his name. She then let the 911 operator know that her family was leaving home for the police station in a brown Honda Odessey. She also told the officer that Davis drove a tan GMC Terrain.

Sergeant Manuel responded to the 911 call. Dispatch had informed him via radio and through written emergency notes that there was a "male threatening to kill a pregnant female, apparently he has an assault rifle in the car." Dispatch also communicated the description of Davis and his SUV given by A.C.'s daughter. And when A.C. and her family left their home, dispatch updated Sgt. Manuel with a description of the family's minivan.

Approximately ten minutes later, Sgt. Manuel spotted Davis's tan GMC driving behind A.C.'s brown Honda. After A.C. hailed him and gestured to Davis's SUV, he pulled them both over. Sgt. Manuel asked Davis to exit his vehicle, patted him down, confirmed his identity, and handcuffed him. Sgt.

Manuel then radioed for backup. Officers Vonbank and McCoy responded.

After handcuffing Davis, Sgt. Manuel searched his vehicle. Witness testimony conflicts on the precise timing of the search. Sgt. Manuel testified that he did not formally arrest Davis or search his car until after Officer Vonbank interviewed A.C. and confirmed the allegations in the 911 call. Officer Vonbank, Davis, and A.C. testified that Sgt. Manuel arrested Davis and searched his car before Vonbank completed his interview.

Inside Davis's car, Sgt. Manuel found a loaded, AR-style shotgun with an obliterated serial number. Davis was charged with being a felon in unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Davis filed a motion to suppress the firearm and a subsequent post-arrest statement, contending that the officers unlawfully searched his vehicle. The district court held a two-day evidentiary hearing. Ultimately, the court denied Davis's motion, finding the warrantless search fell within both the search incident to arrest and the automobile exceptions to the warrant requirement.

Davis entered a conditional guilty plea, reserving his right to appeal the denial of his suppression motion. The district judge imposed a sentence of ninety-two months' imprisonment and two years' supervised release; this appeal followed.

## II. Discussion

On appeal of a district court's denial of a motion to suppress, we review the court's legal conclusions de novo and its factual findings for clear error. *United States v. Williams*, 106 F.4th 639, 653 (7th Cir. 2024).

Warrantless searches are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Salazar*, 69 F.4th 474, 477 (7th Cir. 2023) (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). This case concerns two of these exceptions: search incident to arrest and the automobile exception.

Either exception would justify the warrantless search of the SUV, and Davis asks us to find that neither applies. His claim raises two issues on appeal. First, whether the officers had probable cause to arrest him, as the search incident to arrest exception requires. Second, whether it was reasonable to believe his vehicle contained evidence of a crime, as both the search incident to arrest and automobile exceptions require.[1]

**A. Probable Cause to Arrest**

Officers may search an automobile incident to the lawful arrest of its recent occupant under two circumstances: when "the arrestee is within reaching distance of the passenger compartment at the time of the search," *United States v. Reedy*, 989 F.3d 548, 555 (7th Cir. 2021) (quoting *Gant*, 556 U.S. at 351), or when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* The search incident to arrest exception derives from dual concerns for "officer safety and evidence preservation," *Gant*, 556 U.S. at 338, and its two prongs reflect those concerns. *See id.* at 346.

---

[1] The government also argues that the inevitable discovery doctrine forecloses suppression of the shotgun. Because the search falls squarely within both the search incident to arrest and the automobile exceptions, we need not decide this issue.

It bears emphasizing, however, that warrantless searches incident to arrest are permissible only when the underlying arrest is lawful. *See Virginia v. Moore*, 553 U.S. 164, 177 (2008) (explaining the exception covers any "lawful arrest" (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973))). A warrantless arrest does not run afoul of the Fourth Amendment when supported by probable cause. *United States v. Paige*, 870 F.3d 693, 699 (7th Cir. 2017); *see also Moore*, 553 U.S. at 177 (equating "a lawful arrest with an arrest based on probable cause").

Officers have probable cause to arrest when the facts and circumstances known to them "reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Doe v. Gray*, 75 F.4th 710, 718 (7th Cir. 2023) (quoting *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022)); *see also United States v. Hill*, 818 F.3d 289, 294 (7th Cir. 2016) (describing the inquiry as a commonsense examination of the totality of the circumstances). So, when officers make an arrest for a violation of state law, probable cause depends on "the elements of the predicate criminal offense(s) as defined by state law." *Abbott v. Sangamon County*, 705 F.3d 706, 715 (7th Cir. 2013).

Davis seizes upon factual ambiguity about when his detention morphed into an arrest and whether officers spoke with A.C. before arresting him to argue the district court erred in finding probable cause. This claim misunderstands the court's ruling. The district court assumed without deciding that Davis was under arrest for intimidation prior to Officer Vonbank's conversation with A.C. and found probable cause to arrest regardless. We agree.

Under Indiana's definition of "intimidation," a person "who communicates a threat with the intent … that another

person be placed in fear that the threat will be carried out, [commits a Level 6 felony] if the threat is … to commit a forcible felony." *Gates v. State*, 192 N.E.3d 222, 225 (Ind. Ct. App. 2022) (quoting Ind. Code § 35-45-2-1(a)(4); (b)(1)(A)) (alteration in original). Forcible felonies include felonies involving "the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." Ind. Code § 35-31.5-2-138.

At the time he handcuffed Davis, Sgt. Manuel knew from radio communication and written emergency dispatch notes that a 911 caller had reported a "male threatening to kill them," who stood outside their home, with an assault rifle in his car. Sgt. Manuel also knew the man's name was Michael Davis, and that he drove a tan GMC Terrain. Additionally, Sgt. Manuel knew that A.C. and her family had fled their home in a brown Honda Odyssey.

We have previously held that eyewitness and victim reports establishing the elements of a crime, absent credibility concerns, almost always suffice to find probable cause to arrest. *United States v. McCauley*, 659 F.3d 645, 651 (7th Cir. 2011); *see also McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009) ("Normally, an officer may base a determination of probable cause on information from the putative victim if the officer reasonably believes that the victim is telling the truth.").

Here, A.C.'s teenage daughter established the elements of felony intimidation when she reported Davis's threats in her 911 call. The district court found her report credible, and Davis does not challenge its determination on appeal.

What's more, Sgt. Manuel did not solely rely on the 911 report—he corroborated it. Within 15 minutes of the call, Sgt.

Manuel spotted a tan GMC Terrain following a brown Honda Odyssey a short distance from the caller's residence. He observed A.C. hail him and gesture to the tan SUV behind her, indicating that Davis was the subject of the 911 call. Sgt. Manuel pulled both cars over, observed that Davis matched the description given in the 911 report, and confirmed Davis's identity. He then placed Davis in handcuffs.

Even assuming Sgt. Manuel arrested Davis when he handcuffed him, before Officer Vonbank completed his interview of A.C., there was nonetheless probable cause to arrest him for felony intimidation.

**B. Probable Cause to Search**

Davis also challenges the lawfulness of the search by arguing that Sgt. Manuel lacked a sufficient quantum of suspicion to search his vehicle. His claim takes aim at the applicability of both the search incident to arrest and automobile exceptions to the warrant requirement.

These exceptions "are interrelated, but not identical." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). Officers may search a vehicle incident to arrest when it is "reasonable to believe" the car contains evidence of the offense of arrest. *Reedy*, 989 F.3d at 555. The automobile exception to the warrant requirement is not tied to an arrest. *Edwards*, 769 F.3d at 514. It "permits an officer to search a vehicle without a warrant if the search is supported by probable cause," regardless of any arrest. *United States v. Ochoa-Lopez*, 31 F.4th 1024, 1026 (7th Cir. 2022). Sgt. Manuel's search was supported by probable cause. As a result, the search met the requirements of both exceptions.

"Probable cause to search a vehicle exists when, based on the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Sands*, 815 F.3d 1057, 1063 (7th Cir. 2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The inquiry is objective and conducted *ex ante*. *See Bruce v. Guernsey*, 777 F.3d 872, 878 (7th Cir. 2015). We ask whether "the events which occurred leading up to the stop or search … viewed from the standpoint of an objectively reasonable police officer" support a finding of probable cause. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Credible, corroborated reports from victims and witnesses can also establish probable cause to search. *See United States v. Charles*, 801 F.3d 855, 860–61 (7th Cir. 2015) (holding that a corroborated 911 report gave officers probable cause to search the suspect's car); *Edwards*, 769 F.3d 509, 516 (7th Cir. 2014) (remarking that "[w]hen a car is reported stolen and is recovered, the police have probable cause to look in the car for some evidence of ownership"); *see also Chambers v. Maroney*, 399 U.S. 42, 46–48 (1970) (finding probable cause to search a car for guns and stolen money after speaking with the victim and witnesses to a robbery).

In *United States v. Charles*, a woman called 911, reported a man with a gun had threatened her, and gave a detailed description of him. 801 F.3d at 860. Emergency dispatch relayed the contents of the call to responding officers. Just two minutes later, officers corroborated the allegations by locating a suspect matching the woman's description near the scene of the crime. *Id.* at 861. We found probable cause to search the suspect's vehicle for the gun on these facts. *Id.*

Here, the dispatch report, along with Sgt. Manuel's rapid corroboration of Davis's identity, vehicle, and proximity to A.C., established probable cause to believe that Davis's vehicle contained evidence of intimidation. In particular, Sgt. Manuel had probable cause to search the SUV for the assault rifle, as evidence that Davis had intentionally placed A.C. and her family in fear he would fulfill his threat to kill her baby.

Contrary to Davis's contention, a suspect need not brandish a firearm for it to be evidence of intimidation. Our probable cause inquiry is a commonsense examination of the totality of the circumstances. *Hill*, 818 F.3d at 294. When a victim reports a threat of violence and expresses fear that the threat maker is armed, officers may reasonably infer that the suspect used the weapon to intimidate. Those officers may then conclude the weapon is evidence of intimidation.

*        *        *

The search of Davis's car was lawful, falling within both the search incident to arrest and automobile exceptions to the warrant requirement. For these reasons, the judgment of the district court is

AFFIRMED.